Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/24/2020 08:08 AM CDT

**State of Nebraska, appellee, v.
David E. Degarmo, appellant.**

___ N.W.2d ___

Filed May 1, 2020.    No. S-19-015.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.

2. **Constitutional Law: Search and Seizure: Appeal and Error.** When reviewing whether a consent to search was voluntary, as to the historical facts or circumstances leading up to a consent to search, an appellate court reviews the trial court's findings for clear error. However, whether those facts or circumstances constituted a voluntary consent to search, satisfying the Fourth Amendment, is a question of law, which an appellate court reviews independently of the trial court. And where the facts are largely undisputed, the ultimate question is an issue of law.

3. **Constitutional Law: Search and Seizure: Blood, Breath, and Urine Tests.** The Fourth Amendment prohibits unreasonable searches and seizures, and it is well-established that the taking of a blood, breath, or urine sample is a search.

4. **Search and Seizure: Warrantless Searches.** Searches without a valid warrant are per se unreasonable, subject only to a few specifically established and well-delineated exceptions.

5. **Warrantless Searches.** The warrantless search exceptions Nebraska has recognized include: (1) searches undertaken with consent, (2) searches under exigent circumstances, (3) inventory searches, (4) searches of evidence in plain view, and (5) searches incident to a valid arrest.

6. **Constitutional Law: Search and Seizure: Duress.** Generally, to be effective under the Fourth Amendment, consent to a search must be a free and unconstrained choice, and not the product of a will overborne.
7. **Warrantless Searches: Duress.** Consent for a warrantless search must be given voluntarily and not as a result of duress or coercion, whether express, implied, physical, or psychological.
8. **Constitutional Law: Search and Seizure.** The determination of whether the facts and circumstances constitute a voluntary consent to a search, satisfying the Fourth Amendment, is a question of law.
9. **Search and Seizure.** Whether consent to a search was voluntary is to be determined from the totality of the circumstances surrounding the giving of consent.
10. **Police Officers and Sheriffs: Warrantless Searches.** While there is no requirement that police must always inform citizens of their right to refuse when seeking permission to conduct a warrantless consent search, knowledge of the right to refuse is a factor to be considered in the voluntariness analysis.
11. **Police Officers and Sheriffs: Search Warrants.** A statement of a law enforcement agent that, absent a consent to search, a warrant can be obtained does not constitute coercion.

Appeal from the District Court for Lancaster County, Andrew R. Jacobsen, Judge, on appeal thereto from the County Court for Lancaster County, Thomas E. Zimmerman, Judge. Judgment of District Court affirmed.

Mark E. Rappl for appellant.

Douglas J. Peterson, Attorney General, Nathan A. Liss, and Mariah J. Nickel for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Stacy, J.
David E. Degarmo was convicted of driving under the influence based largely on the testimony of a certified drug recognition expert who concluded Degarmo was under the influence of marijuana. A subsequent chemical test of Degarmo's urine confirmed the presence of marijuana. Degarmo challenges the admission at trial of the results of the warrantless urine test,

relying on the U.S. Supreme Court's opinion in *Birchfield v. North Dakota*.[1] Because we conclude Degarmo consented to the urine test and the results were thus admissible, we do not address the *Birchfield* issue.

## I. FACTS

### 1. TRAFFIC STOP

On the morning of December 26, 2016, Degarmo was driving on a highway in Lancaster County, Nebraska, when he was stopped by Lancaster County Deputy Sheriff Jeremy Schwarz for an expired registration. Degarmo was the only occupant of the vehicle. Schwarz noticed the odor of burnt marijuana coming from inside Degarmo's vehicle, and he asked Degarmo to accompany him back to his cruiser.

Schwarz patted Degarmo down before placing him in the cruiser and found a baggie containing a small amount of marijuana in Degarmo's front pocket. While seated inside the cruiser with Degarmo, Schwarz again smelled marijuana and noticed Degarmo had slow speech and bloodshot eyes. Degarmo admitted that, within the prior 20 minutes, he had smoked a "pinch" of marijuana in his vehicle before he began driving. Schwarz subsequently searched Degarmo's vehicle and found a marijuana pipe in the center console. The pipe contained both burnt and unburnt marijuana. Schwarz noticed Degarmo had a distinct green hue on his tongue with heat-raised taste buds, which Schwarz testified are indicators of recent marijuana inhalation. Schwarz also observed Degarmo to be relaxed and calm and to have fluttering eyelids, and he testified those were also signs of marijuana ingestion.

### 2. FIELD SOBRIETY TESTS

Based on his observations, Schwarz decided to administer field sobriety tests. He conducted a horizontal gaze nystagmus test, a vertical gaze nystagmus test, an eye convergence test,

---

[1] *Birchfield v. North Dakota*, ___ U.S. ___, 136 S. Ct. 2160, 195 L. Ed. 2d 560 (2016).

a "modified Romberg test," a walk-and-turn test, and a one-legged stand test. Degarmo did not show any signs of impairment on the nystagmus tests, but Schwarz testified that is not unusual when the suspected impairment is due to marijuana. Degarmo showed signs of impairment on all of the remaining tests.

After conducting the field sobriety tests, Schwarz had Degarmo return to the cruiser and took his pulse, which measured at 140 beats per minute. Schwarz testified an average normal pulse is 60 to 90 beats per minute. Schwarz arrested Degarmo for driving under the influence and took him to a detoxification center in Lincoln, Nebraska, for a drug recognition evaluation (DRE). A DRE is a nationally standardized protocol for identifying drug intoxication.[2]

### 3. Drug Recognition Evaluation

Schwarz, who is a certified DRE expert, conducted the DRE. It was performed in a testing room with only Schwarz and Degarmo present. Most of the DRE was video recorded, and Degarmo waived his *Miranda* rights prior to the examination.

### (a) Breath Test

At the beginning of the DRE, Schwarz requested a breath sample from Degarmo. In doing so, he read part A of a standardized postarrest chemical test advisement to Degarmo. This form provided:

> You are under arrest for operating or being in actual physical control of a motor vehicle while under the influence of alcoholic liquor or drugs. Pursuant to law, I am requiring you to submit to a chemical test or tests of your breath or urine to determine the concentration of alcohol or drugs in your breath or urine.
>
> Refusal to submit to such test or tests is a separate crime for which you may be charged.

---

[2] See *State v. Daly*, 278 Neb. 903, 775 N.W.2d 47 (2009).

**I have the authority to direct whether the test or tests shall be of your breath or urine and may direct that more than one test be given.**

**A. <u>Request for test:</u>** I hereby direct a test of your <u>✓</u> breath ___ urine to determine the <u>✓</u> alcohol ___ drug content.

Schwarz checked the blank space in front of "breath" and "alcohol" on the advisement, and both Schwarz and Degarmo signed the advisement form at 11:08 a.m. Schwarz testified that when he went through the form, he explained to Degarmo that it pertained only to testing for alcohol ingestion. Degarmo's breath test was completed at 11:27 a.m. and showed no alcohol in his system.

### (b) Opinion of Impairment

After taking the breath test, Schwarz conducted the remainder of the DRE according to the standardized protocol.[3] Schwarz testified, summarized, that Degarmo showed impairment consistent with use of marijuana on most of the DRE tests he administered. Schwarz further testified that the tests on which Degarmo showed no impairment were tests on which marijuana use would not be expected to result in impairment. Schwarz formed the opinion that Degarmo was under the influence of marijuana and was unable to safely operate a motor vehicle. After forming this opinion, Schwarz asked Degarmo to consent to a urine test.

### (c) Urine Test

In connection with requesting consent for a urine test, Schwarz read Degarmo another standardized form. This form was entitled "Consent to Search for Blood/Urine Alcohol or Drug Evidence," and it provided:

I, <u>David E. Degarmo</u>, located at <u>721 K St.</u>, Lancaster County, Nebraska, have been informed of my constitutional right not to have a search made of my blood or

---

[3] See *id.*

urine, which is under my control, without a search warrant. I also have been informed of and understand my right to refuse to consent to such search. I understand that if I refuse to give consent to search my blood or urine, a search warrant for my blood or urine will be sought. With this understanding, I hereby authorize [Deputy] Schwarz, who had identified himself/herself as a law enforcement officer in the State of Nebraska, to conduct a search of my body for blood or urine for alcohol and/or drugs. I understand that such a search may include the drawing of my blood and/or the collection of my urine. I understand that this may be used as evidence against me in criminal proceedings.

I have read and/or have been read this form; I understand it; and I give the officer permission to search my blood or urine. This permission is being given voluntarily and without threats or promises of any kind.

After this consent to search form was read to him, Degarmo signed and dated the form at 12:04 p.m., and he provided the requested urine sample. The signed consent to search form was received into evidence at trial without objection.

Degarmo's urine sample was sent to the Nebraska State Patrol Crime Laboratory for testing. The test results confirmed the presence of the metabolite for tetrahydrocannabinol (the active drug in marijuana) in Degarmo's urine.

### 4. MOTION TO SUPPRESS

Degarmo was charged in the county court for Lancaster County with driving under the influence (one prior conviction), possession of 1 ounce or less of marijuana, and possession of drug paraphernalia. He moved to suppress the results of the urine test, arguing that he did not voluntarily consent to the test and that the urine sample was obtained without a warrant in violation of *Birchfield*,[4] his rights under the 4th and 14th Amendments to the U.S. Constitution, and article I, § 7, of the

---

[4] See *Birchfield, supra* note 1.

Nebraska Constitution. The county court denied the motion to suppress, reasoning in part that Degarmo "freely, voluntarily, knowingly and intelligently" gave consent for the urine test by signing the consent to search form. The matter proceeded to trial.

## 5. Trial

During the jury trial, Schwarz generally testified to the events as set out above. He also testified that after conducting all but the final step of the DRE (the urine test), it was his opinion that Degarmo was under the influence of marijuana and was not able to safely operate a motor vehicle. He testified that he formed his opinion on the cause and extent of Degarmo's impairment prior to conducting the urine test, and he described the urine test in this case as "confirmation" or "corroborat[ion]" of his opinion on Degarmo's impairment.

The toxicologist who tested Degarmo's urine sample also testified at trial. She explained the urine testing process and testified that she performed the test in accordance with "Title 177." Over Degarmo's objection, the toxicologist testified that her testing showed the active drug metabolite for marijuana was present in Degarmo's urine. Her report to that effect was received into evidence, also over Degarmo's objection. The toxicologist admitted that it was not scientifically possible to determine impairment based only on the presence of drug metabolites in urine, and she explained that the purpose of urine testing was simply to "corroborate the drug recognition evaluator's opinion" as to the substance contributing to any impairment.

Degarmo testified in his own defense. As relevant to the issues on appeal, he admitted that on the morning he was stopped by Schwarz, he had smoked a small amount of marijuana inside his vehicle before driving.

## 6. Verdicts and Sentences

The jury found Degarmo guilty on all three charges. On the conviction for driving under the influence, Degarmo was

sentenced to 45 days in jail, fined $500, and his license was revoked for 18 months. On the conviction for possession of marijuana, Degarmo was fined $300. And on the conviction for possession of drug paraphernalia, Degarmo was fined $25.

### 7. Appeal to District Court

Degarmo filed a timely appeal through new court-appointed counsel. He assigned error to the admission of the warrantless urine test result. The district court, sitting as an intermediate court of appeals, affirmed.[5] In doing so, it examined the totality of the circumstances and found that Degarmo voluntarily consented to the urine test. Degarmo appealed again, and we granted his petition to bypass the Court of Appeals.

## II. ASSIGNMENT OF ERROR

Degarmo assigns that the district court erred in affirming the county court's order overruling his motion to suppress the results of the urine test.

## III. STANDARD OF REVIEW

[1] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review.[6] Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.[7]

[2] Likewise, we apply the same two-part analysis when reviewing whether a consent to search was voluntary.[8] As to the historical facts or circumstances leading up to a consent

---

[5] See *State v. Hatfield*, 304 Neb. 66, 933 N.W.2d 78 (2019).

[6] *State v. Brye*, 304 Neb. 498, 935 N.W.2d 438 (2019).

[7] *Id.*

[8] *State v. Schriner*, 303 Neb. 476, 929 N.W.2d 514 (2019).

to search, we review the trial court's findings for clear error.[9] However, whether those facts or circumstances constituted a voluntary consent to search, satisfying the Fourth Amendment, is a question of law, which we review independently of the trial court.[10] And where the facts are largely undisputed, the ultimate question is an issue of law.[11]

## IV. ANALYSIS

[3-5] The Fourth Amendment prohibits unreasonable searches and seizures, and it is well-established that the taking of a blood, breath, or urine sample is a search.[12] Searches without a valid warrant are per se unreasonable, subject only to a few specifically established and well-delineated exceptions.[13] The warrantless search exceptions Nebraska has recognized include: (1) searches undertaken with consent, (2) searches under exigent circumstances, (3) inventory searches, (4) searches of evidence in plain view, and (5) searches incident to a valid arrest.[14]

Both the county court and the district court devoted considerable analysis to whether the search incident to arrest exception can apply to a urine test after the U.S. Supreme Court's decision in *Birchfield*.[15] This case does not require us to answer that question. As explained below, we conclude that Degarmo voluntarily consented to the search of his urine and that his motion to suppress was properly overruled. As such, we do not address the applicability of any other recognized exception to the warrant requirement.

---

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] See, *Birchfield, supra* note 1; *Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989); *Schmerber v. California*, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966).

[13] *State v. Garcia*, 302 Neb. 406, 923 N.W.2d 725 (2019).

[14] *Id.*

[15] See *Birchfield, supra* note 1.

## 1. Legal Standard and
### Historical Facts

As a threshold matter, we emphasize that our analysis in this case is focused exclusively on whether Degarmo voluntarily gave consent for the search of his urine.[16] We thus do not address whether, in the wake of the U.S. Supreme Court's holding in *Birchfield*, Degarmo can also be deemed to have impliedly consented to the urine test pursuant to Nebraska's implied consent laws.[17]

[6-9] Generally, to be effective under the Fourth Amendment, consent to a search must be a free and unconstrained choice, and not the product of a will overborne.[18] Consent must be given voluntarily and not as a result of duress or coercion, whether express, implied, physical, or psychological.[19] The determination of whether the facts and circumstances constitute a voluntary consent to a search, satisfying the Fourth Amendment, is a question of law.[20] Whether consent to a search was voluntary is to be determined from the totality of the circumstances surrounding the giving of consent.[21]

Here, the county court made several findings of historical fact related to its determination that Degarmo voluntarily consented to the urine test. It found that Degarmo was in custody at the time, having been arrested on suspicion of driving under the influence of drugs and transported to a detoxification center for purposes of a DRE. It found that as part of the DRE, Schwarz read Degarmo part A of the postarrest chemical test

---

[16] See *State v. Hoerle*, 297 Neb. 840, 901 N.W.2d 327 (2017) (concluding *Birchfield* did not categorically invalidate warrantless blood draw based on actual consent when driver was incorrectly advised he was required to consent or face criminal penalties and finding totality of circumstances test proper).

[17] See Neb. Rev. Stat. § 60-6,197(1) and (3) (Cum. Supp. 2018).

[18] *Schriner, supra* note 8.

[19] *Id*.

[20] *Id*.

[21] *Id*. See, also, *Hoerle, supra* note 16.

advisement form and directed a test of his breath, and that Degarmo signed part A of that form at 11:08 a.m. It found that about an hour later, Schwarz read Degarmo the consent to search form asking for permission to search his urine, and that Degarmo signed that form at 12:04 p.m. It noted Degarmo's testimony that he signed the forms because he understood that he was going to be "guilty no matter what." It also noted Degarmo's testimony that he felt "belittled" during the entire course of the DRE.

Degarmo does not challenge any of these findings of historical fact, and we agree they are supported by the record and not clearly erroneous. After considering the totality of the circumstances, both the county court and the district court concluded that Degarmo voluntarily consented to the search of his urine. Because this determination presents a question of law, we consider it independently.[22]

2. TOTALITY OF CIRCUMSTANCES

As stated, whether consent to a warrantless search was voluntary is to be determined from the totality of the circumstances surrounding the giving of consent. On appeal, Degarmo advances two reasons why his written consent to the urine test was not voluntary. First, he argues his consent was "coerced out of him by a claim of lawful authority."[23] Next, he argues his consent was not voluntary because he was "in a police-dominated atmosphere."[24] We address each argument in turn.

In arguing that his consent was coerced by a claim of lawful authority, Degarmo claims that after he read and signed the postarrest chemical test advisement form (which directed him to submit to a breath test), he was left with the "'impression'" that if he did not also sign the consent to search form and agree to a search of his urine, that he "'was going to be guilty no

---

[22] *Schriner, supra* note 8.

[23] Brief for appellant at 20.

[24] *Id.*

matter what.'"[25] We find this argument unavailing in light of the plain language of the consent to search form.

[10] The consent to search form expressly advised Degarmo that he had a constitutional right *not* to have a search made of his blood or urine without a search warrant, and the form unequivocally stated that Degarmo had a right to refuse to consent to such a search. While there is no requirement that police must always inform citizens of their right to refuse when seeking permission to conduct a warrantless consent search, knowledge of the right to refuse is a factor to be considered in the voluntariness analysis.[26] Here, the fact that Degarmo was told he had a constitutional right to refuse a warrantless search of his urine is a factor that weighs heavily in favor of finding his consent to such a search was voluntary.

[11] The consent to search form also told Degarmo that if he refused to give consent to search his blood or urine, then officers would seek a search warrant. In his reply brief, Degarmo suggests that the threat of being "detained even further for the possible issuance of a search warrant"[27] was itself coercive, but we disagree. As we explained in *State v. Tucker*,[28] "A statement of a law enforcement agent that, absent a consent to search, a warrant can be obtained does not constitute coercion."

Having considered the language of the postarrest chemical test advisement form in conjunction with the plain language of the consent to search form, we reject Degarmo's suggestion that an objectively reasonable person would be left with the impression he or she had to consent.

Nor are we persuaded by Degarmo's claim that his consent was coerced simply by being "in a police-dominated atmosphere."[29] Degarmo suggests his consent to the urine

---

[25] *Id.*

[26] See *United States v. Drayton*, 536 U.S. 194, 122 S. Ct. 2105, 153 L. Ed. 2d 242 (2002).

[27] Reply brief for appellant at 3.

[28] *State v. Tucker*, 262 Neb. 940, 948, 636 N.W.2d 853, 860 (2001).

[29] Brief for appellant at 20.

search was not voluntary because he "had been arrested, placed in handcuffs, put into a police cruiser, driven to detox, [and] subjected to various tests."[30] All these are factors to consider in a totality of the circumstances analysis, but having done so, we do not agree with Degarmo that any of these factors vitiate the voluntariness of his written consent.

The U.S. Supreme Court has held the "fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search."[31] And this court has similarly recognized that "[t]he mere fact that the individual is in police custody, standing alone, does not invalidate the consent if, in fact, it was voluntarily given."[32] Here, the record shows Degarmo's arrest and transport to a detox center were part of a routine DRE investigation, which was video recorded. There is no evidence that police conducted either the arrest or the DRE in a threatening or coercive manner.[33]

Having considered the totality of the circumstances, we determine Degarmo's written consent to the warrantless search of his urine was voluntary and not coerced. The motion to suppress was properly denied by the county court, and that denial was properly affirmed by the district court.

## V. CONCLUSION

Because Degarmo voluntarily consented to the warrantless search of his urine, the search fell within a recognized exception to the warrant requirement. Finding no error in the district court's decision to affirm the county court's overruling of Degarmo's motion to suppress, we affirm.

Affirmed.

---

[30] Brief for appellant at 20-21.

[31] *United States v. Watson*, 423 U.S. 411, 424, 96 S. Ct. 820, 46 L. Ed. 2d 598 (1976).

[32] *State v. Christianson*, 217 Neb. 445, 449, 348 N.W.2d 895, 898 (1984).

[33] See *Schriner, supra* note 8 (finding consent for warrantless search was voluntary when there was no evidence of police pressure and police body camera recorded interaction).