IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. WEINREIS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DANIEL D. WEINREIS, APPELLANT.

Filed November 9, 2021.    No. A-21-149.

Appeal from the District Court for Scotts Bluff County, ANDREA D. MILLER, Judge, on appeal thereto from the County Court for Scotts Bluff County, Kris D. Mickey, Judge. Judgment of District Court affirmed.

Bell Island, of Island Law Office, P.C., L.L.O, for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

MOORE, BISHOP, and ARTERBURN, Judges.

MOORE, Judge.

INTRODUCTION

Daniel D. Weinreis appeals from an order of the district court for Scotts Bluff County affirming the Scotts Bluff County Court's order denying Weinreis' motion to suppress and finding him guilty of driving under the influence (DUI). For the reasons set forth herein, we affirm.

STATEMENT OF FACTS

*Charges.*

The charges in this case arise out of an incident occurring on December 21, 2019. Weinreis was stopped by law enforcement for speeding. The officer who stopped him observed that Weinreis' eyes were watery and bloodshot and his speech was slurred. Weinreis admitting to

consuming a few drinks at a bar. The officer conducted field sobriety tests and a preliminary breath test, after which he arrested Weinreis and transported him to the hospital for a blood draw.

On January 6, 2020, the State filed a complaint in the county court, charging Weinreis with first offense DUI in violation of Neb. Rev. Stat. § 60-6,196 (Reissue 2010), a Class W misdemeanor, and speeding in violation of Neb. Rev. Stat. § 60-6,186 (Cum. Supp. 2020), an infraction. Specifically, the State alleged that Weinreis operated a motor vehicle upon a public highway while having a concentration of .15 of 1 gram or more by weight of alcohol per 100 milliliters of his blood and that he drove a vehicle on a highway at 96 m.p.h. when the maximum limit was 70 m.p.h.

*Motion to Suppress.*

On March 3, 2020, Weinreis filed a motion to suppress, alleging that the warrantless stop, seizure and arrest of Weinreis, and collection of evidence were all unlawful. Weinreis also alleged that his blood sample was obtained unlawfully without a warrant or valid consent.

A suppression hearing was held on June 17, 2020. The county court heard testimony from Nebraska State Patrol Trooper Jonathan Royle and Weinreis. The court also received exhibits including copies of video recordings from Royle's vehicle, the results of Weinreis' preliminary breath test, and a postarrest chemical advisement form signed by Royle and Weinreis. We note that in his arguments to the court, Weinreis' attorney conceded all objections set forth in the motion to suppress except the propriety of the blood draw and the voluntariness of Weinreis' consent.

Royle testified that on December 21, 2019, he was on duty driving on the highway near Minatare, Nebraska when he observed a vehicle that appeared to be speeding. When Royle first observed Weinreis, he was in a 50-m.p.h. zone, and Royle estimated Weinreis' speed to be about 70 m.p.h. By the time Royle activated his radar, Weinreis had traveled into a 70-m.p.h. zone, and Royle used his radar to confirm that the vehicle was driving 96 m.p.h. at that point. Royle followed the vehicle, activated his overhead emergency lights, and initiated a probable cause traffic stop. Royle contacted the driver, whom he identified as Weinreis. Upon making contact, Royle observed that Weinreis' eyes were bloodshot and watery and that he had a slow reaction time. When Royle asked Weinreis if he had been drinking, Weinreis replied that he had consumed "several whiskey/waters" at a bar in McGrew, Nebraska. Royle then administered field sobriety tests, with Weinreis showing signs of impairment on each of them, and a preliminary breath test, which showed a result of .178. After that, Royle arrested Weinreis for DUI and transported him to the hospital for a blood draw.

A review of the video files admitted into evidence shows that while in Royle's vehicle, Weinreis asked what they would be doing at the hospital. Royle informed Weinreis that they would be doing a blood draw and asked if Weinreis was willing to submit to one. Weinreis replied, although his response is unclear from the video. Royle then informed Weinreis that it would be a separate crime to refuse and stated, "But, uh, we'll get a warrant first and that's gonna make the night go on longer." Weinreis' subsequent response is also unclear from the video.

Royle testified that upon reaching the hospital, he escorted Weinreis inside and testified that he "was asking if [Weinreis] would submit to a blood draw or advising him that it is a blood draw that [Royle was] seeking and he can submit to it or refuse it." More specifically, Royle testified that his advisement consisted of reading the advisement form to Weinreis "verbatim."

However, when asked whether he read "the whole thing verbatim," Royle testified that he read "[j]ust the part that was relevant," which he confirmed "corresponds to the checkmarks." The form admitted into evidence was marked with Weinreis' name and birth date, after which it states:

> You are under arrest for operating or being in actual physical control of a motor vehicle while under the influence of alcoholic liquor or drugs.
>
> (1) _____ Pursuant to law, I am requiring you to submit to a chemical test or tests of your <u>breath</u> to determine the concentration of alcohol in your body. Refusal to submit to such test or tests is a separate crime for which you may be charged.
>
> or
>
> (2) __X__ I am asking you to submit to a chemical test or tests of your <u>blood</u> or <u>urine</u> to determine the concentration of alcohol or drugs in your body. You do not have to submit to such test or tests, but if you refuse, we will seek a warrant requiring such test or tests.
>
> __X__ I consent to a test or tests of my blood or urine.
>
> or
>
> _____ I refuse to submit to a test or tests of my blood or urine.

(Emphasis in original.) In addition to the checkmarks noted as X's above, the form was also marked with Weinreis' and Royle's signatures and the date and time. According to Royle, after he read the advisement, Weinreis agreed to provide a blood sample, which was obtained by hospital personnel. According to Royle, Weinreis did not direct Royle to obtain a warrant, and he never did anything during their contact while at the hospital that made Royle think Weinreis did not want to provide the sample. Both Royle and Weinreis signed a separate form required by the hospital.

Weinreis testified that he recalled a conversation in Royle's vehicle about the blood test and about it being a separate charge if he refused. When asked whether after that conversation he thought he could "decline or refuse to give [Royle] a test without being charged with a separate crime," Weinreis testified, "No. I just thought that was -- that was it. It would be another charge." He was also asked if when they reached the hospital, Royle "ever explain[ed] it differently to you saying, no, that's not correct, it's not a separate charge," to which Weinreis replied, "Not that I recollect." He also responded affirmatively when asked whether he believed when he gave the blood that "if [he] didn't let them take [his] blood it would be a separate charge [he] would be charged with."

On cross-examination, Weinreis acknowledged that Royle mentioned obtaining a warrant if Weinreis did not give blood voluntarily. The following exchange then took place between the prosecutor and Weinreis:

> [PROSECUTOR:] And you actually clarified, so if I give blood, you won't get a warrant? That was a question you asked him on the video; correct?
>
> [WEINREIS:] I believe that's what the video was, but -- yeah.
>
> [PROSECUTOR:] So after that conversation it was clear to you if you didn't voluntarily give blood this -- Trooper Royle was going to get a warrant for that blood?
>
> [WEINREIS:] That I would be charged is what I -- there would be another charge there if I didn't give the blood. So. . . .

[PROSECUTOR:] But you were also aware that he would go get a warrant because he told you he would go get a warrant if you refused; correct?

[WEINREIS:] Yes.

[PROSECUTOR:] And so you knew that the plan was the night would be longer because he would go get a warrant and then you would be charged with another crime if you didn't give blood?

[WEINREIS:] Yes.

On June 6, 2020, the county court entered an order denying Weinreis' motion to suppress. The court rejected Weinreis' argument that because Royle discussed with Weinreis the fact that refusal to submit to a test was a separate crime and because Weinreis testified that he understood he was required to give a blood test, the court was required to find that Weinreis' consent to the blood test was not voluntary. The court observed that Weinreis' argument ignored other evidence, including Royle's statement to Weinreis that a warrant would be required if Weinreis refused to submit to the blood test; Royle's subsequent verbatim recitation of the portion of the postarrest chemical test advisement pertaining to blood tests (informing Weinreis he did not have to submit to a test, but if he refused, a warrant would be sought); and the checkmark next to the portion of the form indicating Weinreis' consent. The court concluded that any possible misunderstanding of Royle's prior remarks was clarified by the language of the advisement, which the court noted was "precisely the reason for the standardized form advisement." The court also observed that had a warrant been obtained and Weinreis elected to refuse the blood draw, it is a correct statement of the law that such refusal is a separate crime for which he could be charged. The court found that if there was any inaccuracy or misunderstanding of Royle's comments and colloquy with Weinreis prior to the reading of the advisement, "such misunderstanding was adequately clarified and there is no constitutional violation."

*Stipulated Bench Trial.*

A stipulated bench trial was held before the county court on July 30, 2020. As part of the parties' agreement to a stipulated bench trial, the State dismissed the speeding charge against Weinreis and filed an amended complaint charging him with first offense DUI (blood alcohol concentration of .08 or more), a Class W misdemeanor. Additional evidence adduced at trial included a copy of Royle's police report and a copy of the lab report showing that Weinreis' blood alcohol content was ".169 g/100 ml." This evidence was received without objection at trial, subject to Weinreis' renewal of his motion to suppress.

Based on the parties' stipulations and other evidence adduced at trial, the county court found Weinreis guilty of DUI. The court subsequently sentenced Weinreis to 9 months' probation.

*Appeal to District Court.*

Weinreis appealed to the district court, asserting in his statement of errors that the county court erred in denying his motion to suppress when it determined that his consent for the blood draw was voluntary. On December 4, 2020, the district court heard Weinreis' appeal, receiving the bill of exceptions from the county court proceedings into evidence. The district court subsequently affirmed the county court's judgment. Looking at the totality of the circumstances, the district

found that Weinreis' consent was voluntary and that the motion to suppress had been appropriately denied. Weinreis then perfected his appeal to this court.

ASSIGNMENT OF ERROR

Weinreis asserts that the district court erred in affirming the county court's decision denying his motion to suppress.

STANDARD OF REVIEW

Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. *State v. Collins*, 307 Neb. 581, 950 N.W.2d 89 (2020). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.* An appellate court independently reviews questions of law in appeals from the county court. *Id.* When deciding appeals from criminal convictions in county court, an appellate court applies the same standards of review that it applies to decide appeals from criminal convictions in district court. *Id.*

In reviewing a trial court's ruling on a motion to suppress evidence based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. *State v. Short*, 310 Neb. 81, 964 N.W.2d 272 (2021). Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *Id.*

Likewise, an appellate court applies a two-part analysis when reviewing whether a consent to search was voluntary. *State v. Saitta*, 306 Neb. 499, 945 N.W.2d 888 (2020). As to the historical facts or circumstances leading up to a consent to search, the appellate court reviews the trial court's findings for clear error. *Id.* However, whether those facts or circumstances constituted a voluntary consent to search, satisfying the Fourth Amendment, is a question of law, which the appellate court reviews independently of the trial court. *State v. Saitta, supra.* And where the facts are largely undisputed, the ultimate question is an issue of law. *Id.*

ANALYSIS

Weinreis asserts that the district court erred in affirming the county court's decision denying his motion to suppress. He argues that the results of his blood draw should have been suppressed because it was obtained without a warrant and his consent was involuntary.

The Fourth Amendment prohibits unreasonable searches and seizures, and it is well-established that the taking of a blood, breath, or urine sample is a search. *State v. Degarmo*, 305 Neb. 680, 942 N.W.2d 217 (2020). Searches without a valid warrant are per se unreasonable, subject only to a few specifically established and well-delineated exceptions. *Id.* The warrantless search exceptions Nebraska has recognized include (1) searches undertaken with consent, (2) searches under exigent circumstances, (3) inventory searches, (4) searches of evidence in plain view, and (5) searches incident to a valid arrest. *Id.*

In *Birchfield v. North Dakota*, 136 S. Ct. 2160, 195 L. Ed. 2d 560 (2016), the U.S. Supreme Court held that a blood test may not be administered without a warrant as a search incident to an

arrest for DUI. In *State v. Hoerle*, 297 Neb. 840, 901 N.W.2d 327 (2017), the Nebraska Supreme Court examined *Birchfield* and its implications on Nebraska law, concluding:

> *Birchfield* does not make categorically invalid a warrantless blood draw based on actual consent when a driver is incorrectly advised that the driver is required to submit to such a test or will face criminal penalties for a refusal. Rather, a court must consider the totality of the circumstances to determine whether a driver's consent to a blood test was freely and voluntarily given.

*State v. Hoerle*, 297 Neb. at 846, 901 N.W.2d at 331-32.

Generally, to be effective under the Fourth Amendment, consent to a search must be a free and unconstrained choice, and not the product of a will overborne. *State v. Degarmo, supra.* Consent for a warrantless search must be given voluntarily and not as a result of duress or coercion, whether express, implied, physical, or psychological. *Id.* The determination of whether the facts and circumstances constitute a voluntary consent to a search, satisfying the Fourth Amendment, is a question of law. *Id.* Whether consent to a search was voluntary is to be determined from the totality of the circumstances surrounding the giving of consent. *Id.* While there is no requirement that police must always inform citizens of their right to refuse when seeking permission to conduct a warrantless consent search, knowledge of the right to refuse is a factor to be considered in the voluntariness analysis. *Id.*

Here, while they were on their way to the hospital, Weinreis asked Royle about the blood draw process. Royle informed him that refusal to submit could result in additional charges but a warrant would be obtained. At the hospital, Royle also read Weinreis the portion of the postarrest Post chemical test advisement form, which informed him that he did not have to submit to a test but that if he refused a warrant requiring such a test would be sought. The form was marked to show that Weinreis consented to the test and was signed by him. A statement of a law enforcement agent that, absent a consent to search, a warrant can be obtained does not constitute coercion. *Id.*

We note that had Royle obtained a warrant and Weinreis refused a blood draw at that point, there are still circumstances after *Birchfield v. North Dakota, supra*, in which this refusal could constitute a separate crime; thus, Royle's statement to Weinreis in the cruiser to that effect was not necessarily inaccurate. See, Neb. Rev. Stat. § 60-6,197 (Cum. Supp. 2020); *State v. McCumber*, 295 Neb. 941, 893 N.W.2d 411 (2017) (holding that § 60-6,197 is facially constitutional because there are circumstances under which conviction for refusal under § 60-6,197 would be valid even after *Birchfield*; explaining that charge for refusal to submit to chemical test could be valid if law enforcement has obtained warrant to conduct blood draw or under exigent circumstances preventing time to secure warrant).

In further support of his argument that his consent to the blood draw was not voluntary, Weinreis also points to the small size of the blood draw room, the presence of hospital personnel, and Royle's location at the far edge of the room. There is nothing in the record to suggest that Weinreis did not hear the advisement read by Royle, who observed the entire process and saw nothing to suggest that Weinreis had not in fact consented. In addition to signing the advisement form, Weinreis also signed a form required by the hospital for the blood draw.

We conclude, as did both the county and the district courts, that Weinreis was aware of his rights and consented to the blood draw. Based upon the totality of the circumstances, his consent was voluntary and the motion to suppress was properly denied.

CONCLUSION

Because Weinreis voluntarily consented to the warrantless search of his blood, the search fell within a recognized exception to the warrant requirement. Finding no error in the district court's decision to affirm the county court's denial of Weinreis' motion to suppress, we affirm.

AFFIRMED.