IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. COLLIER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JERROD A. COLLIER, APPELLANT.

Filed February 8, 2022.    No. A-21-554.

Appeal from the District Court for Lancaster County: SUSAN I. STRONG, Judge, on appeal thereto from the County Court for Lancaster County: JOSEPH E. DALTON, Judge. Judgment of District Court affirmed.

Joe Nigro, Lancaster County Public Defender, and Mark D. Carraher for appellant.

Yohance L. Christie, Lincoln City Prosecutor, and Marcee A. Brownlee for appellee.

MOORE, ARTERBURN, and WELCH, Judges.

ARTERBURN, Judge.

## I. INTRODUCTION

Following a bench trial in the county court for Lancaster County, Jerrod A. Collier was convicted of driving under the influence, first offense; possession of marijuana (1 ounce or less), third offense; possession of drug paraphernalia; and two traffic offenses, all in violation of the Lincoln Municipal Code. He was sentenced to a total of 7 days in jail and ordered to pay $1,225 in fines. In addition, his driver's license was revoked for a period of 6 months. Collier appealed his convictions and sentences to the Lancaster County District Court, which affirmed. Collier then appealed to this court. In this appeal, he alleges that the district court erred in affirming the county court's decisions to overrule his motion to suppress; to find sufficient evidence to adjudge him guilty of driving under the influence; and to sentence him to a period of 7 days in jail for his

conviction for possession of marijuana, third offense. Upon our review, we affirm Collier's convictions and sentences.

## II. BACKGROUND

### 1. TRAFFIC STOP

Shortly after midnight on December 1, 2017, Collier was driving on a highway in Lancaster County, Nebraska, when he was stopped by Officer Sara Genoways of the Lincoln Police Department for speeding. Collier was the sole occupant of his vehicle. Upon contacting Collier, Genoways immediately observed that he "appeared extremely nervous, almost to about a hyperactive point." Collier struggled to sit still in his vehicle. Instead, he constantly moved around in his seat and fidgeted. Additionally, Collier demonstrated "exaggerated" movements, gestured "wildly" while speaking, and spoke very rapidly. Collier also avoided making eye contact with Genoways. Genoways believed that Collier's behavior was "well above and beyond what [she] would typically experience with somebody who [was simply] nervous." Instead, she believed that his behavior was consistent with the behavior of someone who was under the influence of drugs. Notably, Genoways did not smell the odor of alcohol or of marijuana in Collier's vehicle.

When Genoways returned to her patrol car in order to write Collier a ticket for speeding, she contacted the police dispatcher to inquire about Collier's history. Genoways then learned that Collier had previous contacts with law enforcement regarding drug use.

Genoways reinitiated contact with Collier at his vehicle and informed him that she suspected he had ingested drugs prior to driving his vehicle that night. Collier denied using drugs that night, but indicated he had used marijuana approximately 3 weeks prior to the traffic stop.

### 2. FIELD SOBRIETY TESTS

Collier agreed to submit to field sobriety testing. Genoways is a standardized field sobriety testing instructor. She has conducted field sobriety testing on at least a thousand individuals and has had contact with hundreds of people who were under the influence of marijuana. Genoways conducted a horizontal gaze nystagmus test, a walk-and-turn test, a one-legged stand test, and a Romberg balance test on Collier. Collier did not show any signs of impairment on the nystagmus test, but Genoways testified that is not unusual when the suspected impairment is due to marijuana or a stimulant. Collier showed signs of impairment on all of the remaining tests, including, displaying significant leg, eyelid, and body tremors; struggling to maintain his balance; and failing to follow directions.

After conducting the field sobriety tests, Genoways arrested Collier for driving under the influence. A search of Collier's vehicle after his arrest revealed in the glove box, a small baggie containing 2.41 grams of marijuana, a digital scale with marijuana and methamphetamine residue, and a glass jar with a waxy substance present. Genoways transported Collier to a detoxification center in Lincoln, Nebraska, for a drug recognition evaluation (DRE). A DRE is a nationally standardized protocol for identifying drug intoxication. See *State v. Degarmo*, 305 Neb. 680, 942 N.W.2d 217 (2020).

### 3. DRUG RECOGNITION EVALUATION

Genoways conducted the DRE. She is a certified DRE expert and an instructor for other officers seeking to obtain such certification. Genoways has conducted over 120 DRE's during her tenure as a certified DRE expert. Genoways testified, summarized, that upon taking the DRE, Collier showed impairment consistent with the use of marijuana and/or a central nervous system (CNS) stimulant on most portions of the DRE test that were administered to him. She opined that Collier was under the influence of marijuana and a CNS stimulant. She testified that she based her opinion on the combination of the following observations:

> His driving behavior; his impairment that I did see on his divided attention tests; there was an admission of use of cannabis, even though it wasn't that night; his eyelid, leg, body tremors; dilated pupils into -- the lighting conditions; rebound dilation was present, indicative of cannabis use; elevated pulse in all three measurements; an elevated systolic blood pressure; lack of convergence being present[;] sped up internal clock as exhibited during the Romberg balance test; and how he performed on finger-to-nose, but it was mostly on the walk-and-turn test was indicative -- how he walked was almost as if he was trying to balance on a balance beam, very, very unsteady in his steps. And that's indicative of somebody with, maybe, impaired perception of depth, which is also indicative of somebody under the influence of cannabis.

After the completion of the DRE, Collier consented to a test of his urine. The urine sample was sent to the Nebraska State Patrol Crime Laboratory for testing. The test results confirmed the presence of the metabolite for tetrahydrocannabinol (the active drug in marijuana) in Collier's urine. However, marijuana can stay in a person's urine for a week to 45 days, depending on the person's prior use history, their body chemistry, and their overall health. As such, urine tests cannot definitively determine exactly when someone ingested marijuana. The test results also indicated there was no presence of a CNS stimulant in Collier's urine. However, there was an "unusually high" level of caffeine in the urine.

### 4. MOTION TO SUPPRESS

On February 14, 2018, the State filed a complaint charging Collier with count 1, driving under the influence, first offense, in violation of Lincoln Municipal Code § 10.16.030; count 2, possession of marijuana (1 ounce or less), third offense, in violation of Lincoln Municipal Code § 9.48.090; count 3, possession of drug paraphernalia, in violation of Lincoln Municipal Code § 9.48.130; count 4, violation of the speed limit, in violation of Lincoln Municipal Code § 10.14.250; and count 5, no proof of financial responsibility, in violation of Lincoln Municipal Code § 10.16.070. The State later amended the complaint to include a charge of failure to appear. However, such charge was dismissed by the county court due to lack of any evidence to support the charge.

On February 5, 2019, Collier filed a motion to suppress. In the motion, Collier asserted that Genoways lacked probable cause to arrest him for driving under the influence and that, as a result, any evidence which was obtained as a result of his arrest should be suppressed.

In an order filed on May 7, 2019, the county court overruled and denied Collier's motion to suppress. The court concluded as follows:

In the case at bar the Court finds that Officer Genoways lawfully stopped the vehicle being operated by [Collier] after observing [Collier] to commit a traffic violation. Based on her observations of [Collier] along with her expertise in drug recognition [Collier] was arrested on suspicion of driving under the influence. The Court finds that the Officer did have sufficient evidence presented to her to establish probable cause for the arrest of [Collier.]

The matter proceeded to a bench trial. At the trial, the State presented evidence which was in substantial conformity to the events described above.

## 5. VERDICTS AND SENTENCES

The county court found Collier guilty of the five charges alleged in the original complaint. On the conviction for driving under the influence, Collier was sentenced to 7 days in jail, fined $500, and his license was revoked for 6 months. On the conviction for possession of marijuana, third offense, Collier was sentenced to 7 days in jail, to be served concurrent with his sentence for driving under the influence, and fined $500. And, on the remaining three offenses, possession of drug paraphernalia and the two traffic offenses, Collier was sentenced to pay fines totaling $225.

## 6. APPEAL TO DISTRICT COURT

Collier filed a timely appeal from his convictions and sentences to the district court. In the district court, he argued that the county court erred in overruling his motion to suppress, in finding sufficient evidence to convict him of driving under the influence, and in imposing an excessive sentence as to his conviction for possession of marijuana, third offense. The district court ultimately affirmed Collier's convictions and sentences. In doing so, it examined the totality of the circumstances surrounding the December 1, 2017, traffic stop and determined that Genoways had reasonable suspicion to extend the stop in order to conduct field sobriety testing and that she had probable cause to arrest Collier for driving under the influence after the field sobriety tests indicated impairment. The district court specifically affirmed Collier's conviction for driving under the influence, finding that Genoways' testimony about Collier's behavior, in conjunction with the results of Collier's urine test, was sufficient to establish that he was driving under the influence of marijuana. The court found no abuse of discretion in the county court's imposition of sentence for possession of marijuana, third offense.

Collier has now appealed the district court's affirmance of his county court convictions and sentences to this court.

## III. ASSIGNMENTS OF ERROR

On appeal, Collier assigns and argues three errors. First, he asserts that the district court erred in affirming the county court's decision to overrule his motion to suppress because Genoways did not have reasonable suspicion of criminal activity to support a continuation of the traffic stop and because she did not have probable cause for Collier's arrest even after the field sobriety testing. Next, Collier asserts that the State presented insufficient evidence to support his conviction for driving under the influence. Finally, Collier asserts that his 7-day jail sentence for his conviction for possession of marijuana, third offense, was excessive.

## IV. STANDARD OF REVIEW

Both the district court and the Nebraska Supreme Court generally review appeals from the county court for error appearing on the record. *State v. Prescott*, 280 Neb. 96, 784 N.W.2d 873 (2010). In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeal, and as such, its review is limited to an examination of the county court record for error or abuse of discretion. *Id.*

When reviewing a district court's determinations of reasonable suspicion to conduct an investigatory stop and probable cause to arrest, ultimate determinations of reasonable suspicion and probable cause are reviewed de novo. See *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011). But findings of historical fact to support that determination are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial court. *Id.*

When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Howard, supra.* And whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *Id.*

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Morton*, 310 Neb. 355, 966 N.W.2d 57 (2021). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Martinez*, 306 Neb. 516, 946 N.W.2d 445 (2020).

## V. ANALYSIS

### 1. MOTION TO SUPPRESS

Collier does not contest the propriety of the initial traffic stop. Nor could he reasonably do so, because the record shows that Collier was stopped for speeding. And a traffic violation, no matter how minor, creates probable cause to stop the driver of a vehicle. *State v. Abu-Serieh*, 25 Neb. App. 462, 908 N.W.2d 86 (2018). Collier does, however, contest whether Genoways had reasonable suspicion to extend the scope of the traffic stop and whether she had probable cause to arrest him for driving under the influence. Collier filed a pretrial motion to suppress, which the county court overruled and the district court affirmed. Upon our review, we also affirm the decision of the county court to overrule the motion to suppress. We first address Collier's assertion that Genoways lacked probable cause to arrest him.

### (a) Probable Cause for Arrest

Collier asserts that the field sobriety tests administered to him during the traffic stop did not establish that he was impaired and that, as such, Genoways lacked probable cause to arrest him. Genoways administered five sobriety tests to Collier prior to arresting him for driving under the influence: the HGN test, the nine-step walk-and-turn test, the one-legged stand test, the Romberg balance test, and the alphabet recitation test. According to Genoways' testimony, Collier

passed the HGN test, which was consistent with the use of marijuana, but showed signs of impairment on the other tests.

Specifically, Genoways detailed that during the Romberg balance test she observed Collier to sway in all directions and to have significant eyelid tremors. In addition, when she asked him to estimate when 30 seconds had passed, he indicated after only 14 seconds. Genoways explained that a faster than normal internal clock can indicate the use of marijuana.

During the walk-and-turn test, Genoways observed Collier to have difficulty maintaining his balance during the instructions. He "flail[ed]" his arms rather than keeping them at his side. Collier was unsteady with his steps, including, not touching his toe to his heel, making an improper turn, and stepping off of the line. Genoways also observed Collier to have leg and body tremors, which are common in persons who are under the influence of marijuana.

During the one-legged stand test, Genoways observed Collier to have a "notable sway" and to use his arms to maintain his balance. In addition, he had to put his foot down to avoid falling.

When Collier recited the alphabet to Genoways, he did so very quickly, in contravention to the instructions to say the letters in a slow and controlled manner.

Genoways testified as to her proficiency with performing field sobriety testing. She has been a police officer for 11 years. During that 11 years, she has become a standardized field sobriety testing instructor, indicating her vast experience with driving under the influence investigations. In fact, Genoways testified that she has made at least 450 arrests for alcohol impairment and has conducted over 120 DRE's during her tenure.

The county court specifically found that given Genoways' observations of Collier during the traffic stop, in conjunction with his performance on field sobriety testing, that she had probable cause to believe Collier was under the influence of drugs: "Based upon her training and experience, the officer believed that [Collier] was under the influence of drugs and not capable of operating a motor vehicle safely." The district court affirmed the county court's finding, stating: "Once [Collier] failed the field sobriety tests and Officer Genoways observed [his] body, leg, and eyelid tremors, there was sufficient probable cause to arrest [Collier] for operating a motor vehicle under the influence." When a law enforcement officer has knowledge, based on information reasonably trustworthy under the circumstances, which justifies a prudent belief that a suspect is committing or has committed a crime, the officer has probable cause to arrest without a warrant. See *State v. Baue*, 258 Neb. 968, 607 N.W.2d 191 (2000).

We find no error in the district court's affirmance of the county court's denial of the motion to suppress on the grounds that Genoways did not have probable cause to arrest Collier for driving under the influence. Genoways' initial observations of Collier's behavior during the traffic stop in conjunction with his performance on the field sobriety tests provided Genoways with probable cause for Collier's arrest.

(b) Reasonable Suspicion to Continue Traffic Stop

In his brief on appeal, Collier also asserts that Genoways lacked reasonable suspicion to extend the scope of the traffic stop in order to perform field sobriety tests. He contends that the county court should have granted the motion to suppress on this basis. We note, however, that in Collier's written motion, he does not allege that Genoways lacked reasonable suspicion to extend the scope of the traffic stop, instead, arguing only that "the officers lacked probable cause to arrest

- 6 -

[him]." Collier did very briefly mention a challenge to the "extent of the stop" at the suppression hearing. But, in the county court's order, it does not address the scope of the traffic stop. However, the district court, in affirming the county court's decision to deny the motion to suppress, did discuss the scope of the traffic stop, finding, "Genoways had a reasonable suspicion to continue her investigation and perform field sobriety testing."

Assuming without specifically deciding that the issue of whether Genoways had reasonable suspicion to extend the scope of the traffic stop to perform field sobriety testing is before us, we determine that Genoways did, in fact, have the necessary reasonable suspicion to extend the stop in order to conduct field sobriety testing.

Once a vehicle is lawfully stopped, a law enforcement officer may conduct an investigation reasonably related in scope to the circumstances that justified the traffic stop. *State v. Prescott*, 280 Neb. 96, 784 N.W.2d 873 (2010). In order to continue to detain a motorist, an officer must have a reasonable, articulable suspicion that the person is involved in criminal activity beyond that which initially justified the stop. *Id*. The Supreme Court has more specifically held that an officer is required to have only a reasonable, articulable suspicion that a motorist was driving under the influence in order to expand the scope of the initial traffic stop and detain him or her for field sobriety tests. *Id*. Whether a police officer has a reasonable suspicion based on sufficient articulable facts depends on the totality of the circumstances. *Id*. Courts must determine whether reasonable suspicion exists on a case-by-case basis. *Id*. Reasonable suspicion entails some minimal level of objective justification for detention. It is something more than an inchoate and unparticularized hunch--but less than the level of suspicion required for probable cause. *Id*.

In this case, Genoways testified that she decided to conduct field sobriety testing primarily due to Collier's unusual behavior. Such behavior included Collier's "jerky," "exaggerated," and constant movements; his hyperactivity; his lack of focus in his communication; his rapid speech patterns; and his reluctance to make eye contact with her. Based upon Genoways' experience with drug use, including her status as a certified drug recognition expert and instructor for such certification, she believed that Collier's behavior was consistent with the behavior of someone who was under the influence of drugs. Genoways testified that she has been specifically trained to recognize if someone is under the influence of a drug other than alcohol.

Contrary to Collier's assertions on appeal, Genoways specifically testified that Collier's behavior was much more than just the result of being nervous due to being stopped by law enforcement. She indicated that Collier's behavior was "well above and beyond what [she] would typically experience with somebody who comes off as nervous."

Subsequent to contacting Collier, Genoways learned that he had a history of law enforcement contacts due to his drug use. Such information also played a role in her belief that Collier was under the influence of drugs.

Based upon the totality of the circumstances surrounding the traffic stop, Collier's behavior, his history of drug use, and Genoways' experience with drugs and their effect on the human body, we conclude, as did the district court, that Genoways had reasonable suspicion to extend the scope of the traffic stop in order to conduct field sobriety testing. As such, Collier's assertion that the motion to suppress should have been granted on this basis must fail.

## 2. SUFFICIENCY OF EVIDENCE FOR DUI CONVICTION

On appeal, Collier contests whether there was sufficient evidence to support his conviction for driving under the influence of marijuana. Specifically, he contends that because Genoways opined that Collier was under the influence of both marijuana and a CNS stimulant after conducting a drug recognition evaluation, and that such opinion proved to be incorrect because Collier's urine sample only tested positive for marijuana, that Genoways' testimony and opinion was simply not credible. The district court affirmed Collier's conviction for driving under the influence and we affirm that decision by the district court.

Pursuant to Lincoln Municipal Code § 10.16.030 (2017), a person is guilty of driving under the influence if he or she operates or is in actual physical control of any motor vehicle while under the influence of alcoholic liquor, or of any drug. There is no dispute that Collier was operating a motor vehicle on the night of December 1, 2017. Collier focuses his insufficiency argument on whether he was under the influence of any drug while he was driving.

There was sufficient evidence presented at trial to support Collier's conviction for driving under the influence. At trial, Genoways testified as to her experience as a certified drug recognition expert and as an 11-year law enforcement officer who has conducted hundreds of driving under the influence investigations. She also detailed her observations of Collier's unusual and erratic behavior during the initial stage of the traffic stop. Genoways also provided a comprehensive and thorough explanation of Collier's poor performance on the field sobriety tests. Ultimately, Genoways formed an opinion as a drug recognition expert that Collier was under the influence of drugs.

The Supreme Court has stated that "a law enforcement officer with the training and experience offered by DRE certification is sufficiently qualified to testify, based on his or her evaluation, that a suspect was under the influence of drugs." *State v. Daly*, 278 Neb. 903, 919, 775 N.W.2d 47, 63 (2009). Further, the Supreme Court has reiterated that whether impairment is caused by alcohol or drugs, a conviction for DUI may be sustained by either a law enforcement officer's observations of a defendant's intoxicated behavior or the defendant's poor performance on field sobriety tests. *Id*.

In this case, in addition to Genoways' testimony, a forensic scientist for the State Patrol Crime Laboratory testified that the THC metabolite was present in Collier's urine sample. Such testing provided some confirmation for Genoways' opinion that Collier was driving under the influence of marijuana. Other confirmation included the marijuana and drug paraphernalia located in the glove compartment of Collier's vehicle.

We conclude that when viewed in the light most favorable to the State, the evidence presented at trial was clearly sufficient to support Collier's conviction for driving under the influence. Despite the fact that the test of Collier's urine did not reveal the presence of a CNS stimulant, such test did reveal the presence of marijuana. The test results, in conjunction with Genoways' experienced opinion that Collier was under the influence of a drug, are sufficient to support his conviction for driving under the influence. We affirm the decision of the district court to affirm the county court in this regard.

### 3. EXCESSIVE SENTENCE

Finally, Collier argues that the district court erred in failing to find that the county court imposed an excessive sentence as to his conviction for possession of marijuana, third offense. Notably, Collier does not challenge his sentences as to any of his other four convictions.

Collier was convicted of possession of marijuana (1 ounce or less). This conviction was later enhanced to a third offense. Possession of marijuana, third offense, is a misdemeanor offense pursuant to Lincoln Municipal Code § 9.48.090 (2013). Such offense is punishable by a $500 fine and up to 7 days in jail. § 9.48.090(b)(3). The county court sentenced Collier to a $500 fine and 7 days in jail. As such, while the sentence is within the statutory limits, it is the maximum sentence permitted.

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the crime. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Collier was 29 years old at the time of sentencing. He is a high school graduate and was employed full time at the time of his offense. His criminal history includes seven prior convictions for possession of marijuana. He was sentenced to pay a fine for each prior conviction. In addition, Collier has three prior convictions for attempted possession of a controlled substance. One of those convictions was based upon the methamphetamine residue found on the scale in Collier's vehicle at the time of the December 1, 2017, traffic stop.

While the county court did not order a presentence report be completed in this case, a report was generated in 2019, prior to sentencing on Collier's most recent conviction for attempted possession of a controlled substance, which was the result of the methamphetamine residue found during the December 1, 2017, traffic stop. However, Collier did not appear for two scheduled interviews with probation, so this report is fairly brief.

On appeal to this court, Collier acknowledges that his sentence for possession of marijuana, third offense, is within the statutory limits. He argues that such sentence is still excessive because it is "well beyond what is needed for protection of the public and the gravity of the offense." Brief for appellant at 21. We find no abuse of discretion in the county court's sentencing determination. There is nothing in our record to suggest that the county court considered any inappropriate sentencing factors. Rather, the court weighed the information before it, including Collier's lengthy history of drug-related convictions, and determined that a sentence of a $500 fine and 7 days in jail was appropriate. We affirm the decision of the district court which affirmed the sentencing determination of the county court.

## VI. CONCLUSION

We find no error in the district court's decision to affirm the county court's overruling of Collier's motion to suppress or in its decision to affirm Collier's convictions and sentences. Therefore, we also affirm the judgment of the county court.

AFFIRMED.