Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/28/2019 09:06 AM CDT

STATE OF NEBRASKA, APPELLEE, V.
CLINT W. SCHRINER, APPELLANT.
___ N.W.2d ___

Filed June 28, 2019.    No. S-18-893.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment or the safeguards established by the U.S. Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment or Fifth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.

2. **Constitutional Law: Search and Seizure: Appeal and Error.** When reviewing whether a consent to search was voluntary, as to the historical facts or circumstances leading up to a consent to search, an appellate court reviews the trial court's findings for clear error. However, whether those facts or circumstances constituted a voluntary consent to search, satisfying the Fourth Amendment, is a question of law, which an appellate court reviews independently of the trial court. And where the facts are largely undisputed, the ultimate question is an issue of law.

3. **Police Officers and Sheriffs.** There are three tiers of police encounters under Nebraska law.

4. **Constitutional Law: Police Officers and Sheriffs: Search and Seizure.** The first tier of police-citizen encounters involves no restraint of the liberty of the citizen involved, but, rather, the voluntary cooperation of the citizen is elicited through noncoercive questioning. This type of contact does not rise to the level of a seizure and therefore is outside the realm of Fourth Amendment protection.

5. **Constitutional Law: Criminal Law: Police Officers and Sheriffs: Investigative Stops: Search and Seizure: Words and Phrases.** The

second category of police-citizen encounters, the investigatory stop, as defined by the U.S. Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), is limited to brief, nonintrusive detention during a frisk for weapons or preliminary questioning. This type of encounter is considered a "seizure" sufficient to invoke Fourth Amendment safeguards, but because of its less intrusive character requires only that the stopping officer have specific and articulable facts sufficient to give rise to reasonable suspicion that a person has committed or is committing a crime.

 6. **Constitutional Law: Criminal Law: Police Officers and Sheriffs: Arrests: Search and Seizure: Probable Cause.** The third type of police-citizen encounters, arrests, is characterized by highly intrusive or lengthy search or detention. The Fourth Amendment requires that an arrest be justified by probable cause to believe that a person has committed or is committing a crime.

 7. **Constitutional Law: Search and Seizure.** A seizure in the Fourth Amendment context occurs only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave.

 8. \_\_\_\_: \_\_\_\_. In addition to situations where an officer directly tells a suspect that he or she is not free to go, circumstances indicative of a seizure may include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the citizen's person, or the use of language or tone of voice indicating the compliance with the officer's request might be compelled.

 9. **Constitutional Law: Miranda Rights.** *Miranda* warnings are required only where there has been such a restriction on one's freedom as to render one "in custody."

10. **Arrests: Words and Phrases.** Being in custody does not require an arrest, but refers to situations where a reasonable person in the defendant's situation would not have felt free to leave and, thus, would feel the restraint on freedom of movement of the degree associated with a formal arrest.

11. **Constitutional Law: Miranda Rights: Self-Incrimination.** *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), prohibits the use of statements derived during custodial interrogation unless the prosecution demonstrates the use of procedural safeguards that are effective to secure the privilege against self-incrimination.

12. **Miranda Rights: Police Officers and Sheriffs: Words and Phrases.** For purposes of *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), interrogation refers not only to express questioning, but also to any words or actions on the part of the police that the police

should know are reasonably likely to elicit an incriminating response from the suspect.

13. **Miranda Rights: Evidence.** Statements made in a conversation initiated by the accused or spontaneously volunteered by the accused are not the result of interrogation and are admissible.

14. **Constitutional Law: Warrantless Searches: Search and Seizure.** Warrantless searches and seizures are per se unreasonable under the Fourth Amendment, subject to a few established and well-delineated exceptions.

15. **Warrantless Searches.** One well-recognized exception to the warrant requirement is a search undertaken with consent.

16. **Constitutional Law: Search and Seizure: Duress.** To be effective under the Fourth Amendment, consent to a search must be a free and unconstrained choice, and not the product of a will overborne. Consent must be given voluntarily and not as the result of duress or coercion, whether express, implied, physical, or psychological.

17. **Constitutional Law: Search and Seizure.** The determination of whether the facts and circumstances constitute a voluntary consent to a search, satisfying the Fourth Amendment, is a question of law.

18. **Search and Seizure.** Whether consent to a search was voluntary is to be determined from the totality of the circumstances surrounding the giving of consent.

19. **Police Officers and Sheriffs: Search Warrants: Search and Seizure.** A statement of a law enforcement agent that, absent a consent to search, a warrant can be obtained does not constitute coercion.

Appeal from the District Court for Richardson County: Julie D. Smith, Judge. Affirmed.

Steven J. Mercure, of Nestor & Mercure, for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Freudenberg, J.

## NATURE OF CASE

Clint W. Schriner was charged with and convicted of manufacturing a controlled substance (marijuana) within 1,000 feet

of a school under Neb. Rev. Stat. § 28-416 (Reissue 2016), a Class II felony, and possession of a controlled substance (methamphetamine) under § 28-416, a Class IV felony. The district court sentenced Schriner to 1 to 5 years' imprisonment and 2 to 2 years' imprisonment respectively, to be served consecutively. Schriner appeals his convictions, solely asserting that the lower court erred in denying his motion to suppress based upon alleged violations of his Fourth Amendment and Fifth Amendment rights during his encounter with law enforcement.

## BACKGROUND

### ARREST

In October 2016, Richardson County Deputy Sheriff Jonathan Kirkendall was serving civil papers in Humboldt, Nebraska, when he noticed a strong odor of marijuana. Kirkendall was told by local residents that the smell was coming from a neighboring house.

After speaking to these residents, Kirkendall confirmed that the odor was emanating from the identified house. He then approached the house and knocked on the door. Schriner answered the door in his pajamas and came outside to his porch area. When doing so, Schriner shut the door behind him and locked himself out of his house.

When Kirkendall first made contact with Schriner, he observed that there was an overwhelming odor of marijuana being emitted both from within Schriner's residence and from Schriner's person. When asked about the odor, Schriner admitted that he had recently smoked marijuana.

Kirkendall then asked Schriner to remain on the porch while Kirkendall called the sheriff to inquire as to how to proceed. Schriner asked whether he could go inside to get dressed, to which Kirkendall replied, "'Not right now, Sir.'" Schriner then started toward the door, and Kirkendall again asked Schriner to stay out of the residence.

While on the telephone with the sheriff, Kirkendall asked Schriner for consent to search the house. Schriner refused to give consent. Kirkendall told Schriner that the next step was to "request a search warrant," to which Schriner replied, "'Fine. Do what you gotta do.'" At that point, Schriner again attempted to go back inside the house, but Kirkendall told him that he was not allowed to go back inside the house for fear that Schriner would destroy evidence.

Schriner, while still standing on his front porch, used his cell phone to call his sister and told her he was being detained by law enforcement. Specifically, Schriner said, "Hey hun, I got . . . a cop at my door saying because he smells weed outside . . . I'm like detained outside my house right now. . . . And he's . . . talking to the sheriff right now." Schriner testified that in that moment, he believed he was being detained. However, Kirkendall never told Schriner that he was not free to leave.

Schriner asked Kirkendall if a search warrant was going to be granted. Kirkendall responded that the sheriff was "going to write one." At that point, Schriner started asking for leniency. He asked Kirkendall whether he would "cut [him] a break if [he] let [him] in" and whether he would "look the other way for 5 minutes, while [he got] rid of something." That "something," per Schriner, was a small amount of methamphetamine that he did not want to get charged with.

After Schriner disclosed that he had methamphetamine in his residence, Kirkendall discussed with Schriner the possibility of his cooperating on the methamphetamine "aspect of [the situation]." At the same time, Kirkendall again started speaking on the telephone with the sheriff. While Kirkendall was on the telephone, Schriner said that "the neighbors are watching right now" and asked Kirkendall, "Can we go inside the house? Let's just go inside the house. Might as well, you're getting a fucking search warrant."

Schriner also said that he wanted to call his sister to inform her that he was probably going to be arrested. To that, Kirkendall replied, "No, that, that's not, that's not what I'm doing." Schriner was surprised by this response and invited Kirkendall into the residence to "talk about it." Kirkendall accepted the invitation to enter the residence.

Schriner spent approximately 15 minutes trying to get back inside his house. He finally managed to get back inside by removing a windowpane from the back door and manually unlocking it. Upon entering the residence, Schriner led Kirkendall throughout the house, showing him his marijuana grow operation, his various pieces of drug paraphernalia, and the small amount of methamphetamine in his possession. In all, Schriner had approximately 65 marijuana plants, the equipment to grow them, numerous other pieces of drug paraphernalia, and baggies of methamphetamine.

Kirkendall told Schriner that he was going to arrest him, but before actually doing so, Kirkendall let Schriner change his clothes, smoke a cigarette, make various telephone calls, and say good-bye to his pets. Kirkendall and Schriner then walked outside, where Schriner was handcuffed and placed in the patrol vehicle. Kirkendall and another officer then collected the evidence from the house.

Throughout his interaction with law enforcement, without being questioned, Schriner made a number of statements regarding his current situation with law enforcement and the drugs in his possession. Kirkendall generally reacted by indicating he had heard the statements. Kirkendall asked a few questions in response to some of Schriner's remarks. Many of the volunteered statements made by Schriner were incriminating. Notably, after being handcuffed and placed in Kirkendall's patrol vehicle, Schriner made a number of incriminating statements including, "I was growing some weed," "They tend to frown on that," "It helps my back," and "You guys can just lose that meth; you don't know how much I appreciate that."

Motion to Suppress

Based on the evidence, the State charged Schriner with manufacturing a controlled substance (marijuana) within 1,000 feet of a school under § 28-416, a Class II felony; possession of a controlled substance (methamphetamine) under § 28-416, a Class IV felony; and possession of drug paraphernalia under Neb. Rev. Stat. § 28-441 (Reissue 2016), an infraction.

Prior to trial, Schriner moved to suppress the physical evidence seized from his house as well as any statements made to law enforcement during his interaction with Kirkendall. Schriner argued that suppression was warranted based on alleged violations of his Fourth Amendment and Fifth Amendment rights. Schriner argued that the suppression was warranted because (1) he was unlawfully seized, in violation of the Fourth Amendment; (2) his statements were improperly obtained under *Miranda v. Arizona*,[1] in violation of the Fifth Amendment; and (3) his consent to the search was coerced, based on Kirkendall's indication that he had a search warrant, in violation of the Fourth Amendment.

At the hearing, Kirkendall testified as described above, noting that Schriner was not arrested until after he led Kirkendall throughout the house; that he did not give *Miranda* warnings to Schriner during the contact; and that he never told Schriner that he had a search warrant or that one would be granted. In addition to this testimony, the State offered into evidence a 1-hour video recording from Kirkendall's body camera of the interaction. The recording was received into evidence without objection.

Schriner testified at the hearing that he felt like he was detained early during his interaction with Kirkendall and that he allowed Kirkendall inside his residence only because he thought a search warrant was being issued.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

The district court granted in part and overruled in part Schriner's motion to suppress. The district court granted a portion of Schriner's request to suppress his statements involving a short exchange after Schriner had been informed that he was going to be arrested. Specifically, Kirkendall asked Schriner the following questions while Schriner was handcuffed and placed in the back of Kirkendall's patrol vehicle: "Alright, what's this used for?"; "To smoke oil?"; "Is there any oil in it?"; and "Do you have any additional oil anywhere else?" The district court concluded that these questions by Kirkendall were part of a custodial interrogation without *Miranda* warnings. Thus, the court sustained Schriner's motion to suppress as to his responses to the specific questions listed above.

The district court overruled the remainder of Schriner's motion because the court concluded that (1) the initial seizure of Schriner was appropriate, (2) Schriner's other statements were not made during a custodial interrogation, and (3) Schriner's consent to the search of his residence was not a result of coercion, intimidation, or any improper promises or threats.

## TRIAL

At a bench trial, the State called three witnesses to testify. Kirkendall again testified about his observations during his encounter with Schriner on the day of the arrest and that Schriner's house was located approximately 689 feet from a nearby school. The State also called an evidence custodian and a forensic scientist to testify about the various substances recovered from Schriner's house. The footage from Kirkendall's body camera was admitted into evidence over Schriner's objection.

During trial, Schriner repeatedly renewed his objections regarding physical evidence and Schriner's statements during his encounter with Kirkendall on the same grounds as presented in his motion to suppress. After repeatedly overruling

Schriner's objections, the district court granted a standing objection to preserve the issues for appeal.

During his defense, Schriner asserted an entrapment by estoppel claim. He argued that the signs indicating that his residence was located in a school zone were misplaced. Schriner also presented evidence that he relied on those signs when he purchased his house in 2013 and that he would not have bought the house had he known it was located in a drug-free zone. Further, Schriner called Schriner's attorney's law clerk to testify. She testified that there were numerous "Drug Free Zone" signs around the school and that Schriner's house fell outside their perimeter. In the same vein, Schriner testified that he would not have bought the house had he known it was located in a drug-free zone. However, on cross-examination, Schriner admitted that he owned and lived in the house at issue, he was growing marijuana inside, and he had possessed methamphetamine.

## VERDICTS AND SENTENCING

Following trial, the district court rejected Schriner's entrapment by estoppel defense and found Schriner guilty of both the manufacturing charge and the possession charge. The State dismissed the paraphernalia charge.

At a subsequent sentencing hearing, the district court sentenced Schriner to 1 to 5 years' imprisonment on the manufacturing conviction and 2 to 2 years' imprisonment on the possession of methamphetamine conviction, with those sentences to be served consecutively.

## ASSIGNMENTS OF ERROR

Schriner assigns that the district court erred by overruling his motion to suppress physical evidence and statements used against him at trial for the following reasons: (1) Law enforcement unlawfully detained and unreasonably seized Schriner and thereby violated his Fourth Amendment rights; (2) law enforcement did not read Schriner his *Miranda* rights after he was arrested and thereby violated his Fifth Amendment

right against self-incrimination; and (3) Schriner's consent to the search of his home was not freely and voluntarily given and was the exploitation of the prior Fourth Amendment violation.

## STANDARD OF REVIEW

[1] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment or the safeguards established by the U.S. Supreme Court in *Miranda*, an appellate court applies a two-part standard of review.[2] Regarding historical facts, an appellate court reviews the trial court's findings for clear error.[3] But whether those facts trigger or violate Fourth Amendment or Fifth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.[4]

[2] Likewise, we apply the same two-part analysis when reviewing whether a consent to search was voluntary.[5] As to the historical facts or circumstances leading up to a consent to search, we review the trial court's findings for clear error.[6] However, whether those facts or circumstances constituted a voluntary consent to search, satisfying the Fourth Amendment, is a question of law, which we review independently of the trial court.[7] And where the facts are largely undisputed, the ultimate question is an issue of law.[8]

## ANALYSIS

The facts of this case are not in dispute. Rather, the central issues of the case relate to the constitutionality of Schriner

---

[2] *State v. Khalil*, 25 Neb. App. 449, 908 N.W.2d 97 (2018). See, also, *State v. Smith*, 286 Neb. 856, 839 N.W.2d 333 (2013).

[3] *State v. Khalil, supra* note 2.

[4] *Id.*

[5] *State v. Modlin*, 291 Neb. 660, 867 N.W.2d 609 (2015).

[6] *Id.*

[7] *Id.*

[8] *Id.*

and law enforcement's interaction and the subsequent search of Schriner's residence. Schriner assigns that the district court erred by overruling his motion to suppress physical evidence and statements used against him at trial for the following reasons: (1) Law enforcement unlawfully detained and unreasonably seized Schriner and thereby violated his Fourth Amendment rights, (2) law enforcement did not read Schriner his *Miranda* rights after he was arrested and thereby violated his Fifth Amendment right against self-incrimination, and (3) Schriner's consent to the search of his home was not freely and voluntarily given and was the exploitation of the prior Fourth Amendment violation. We disagree and find that the district court properly resolved Schriner's motion to suppress.

## Challenged Seizure or Detention

First, Schriner argues that his initial encounter with law enforcement quickly transformed into a de facto custodial arrest and unreasonable seizure when Schriner was "restrained, confined[,] and detained" on his front porch.[9] In sum, Schriner argues that he reasonably believed he was not free to leave during the encounter and that Kirkendall lacked sufficient cause to detain him. Accordingly, Schriner contends that the court erred in overruling in part his motion to suppress.

The State maintains that law enforcement in this case complied with the Fourth Amendment. The State argues that the contact between law enforcement and Schriner "began as a tier-one police-citizen encounter and evolved into a tier-three police-citizen encounter" upon Schriner's being taken outside and handcuffed by Kirkendall.[10] We agree with the State.

[3-6] There are three tiers of police encounters under Nebraska law. The first tier of police-citizen encounters involves no restraint of the liberty of the citizen involved, but, rather, the voluntary cooperation of the citizen is elicited

---

[9] See brief for appellant at 13.

[10] See brief for appellee at 13.

through noncoercive questioning.[11] This type of contact does not rise to the level of a seizure and therefore is outside the realm of Fourth Amendment protection. The second category, the investigatory stop, as defined by the U.S. Supreme Court in *Terry v. Ohio*,[12] is limited to brief, nonintrusive detention during a frisk for weapons or preliminary questioning.[13] This type of encounter is considered a "seizure" sufficient to invoke Fourth Amendment safeguards, but because of its less intrusive character requires only that the stopping officer have specific and articulable facts sufficient to give rise to reasonable suspicion that a person has committed or is committing a crime.[14] The third type of police-citizen encounters, arrests, is characterized by highly intrusive or lengthy search or detention.[15] The Fourth Amendment requires that an arrest be justified by probable cause to believe that a person has committed or is committing a crime.[16] Only the second and third tiers of police-citizen encounters are seizures sufficient to invoke the protections of the Fourth Amendment to the U.S. Constitution.[17]

[7,8] A seizure in the Fourth Amendment context occurs only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave.[18] In addition to situations where an officer directly tells a suspect that he or she is not free to go, circumstances indicative of a seizure may include the threatening presence of several officers, the display of a weapon by an

---

[11] *State v. Shiffermiller*, 302 Neb. 245, 922 N.W.2d 763 (2019).

[12] *Id.*

[13] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). See, also, *State v. Shiffermiller, supra* note 11.

[14] *State v. Shiffermiller, supra* note 11.

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *State v. Gilliam*, 292 Neb. 770, 874 N.W.2d 48 (2016).

officer, some physical touching of the citizen's person, or the use of language or tone of voice indicating the compliance with the officer's request might be compelled.[19]

Based on the record before us, the contact began when Kirkendall approached Schriner's house and Schriner answered his door. Thereafter, Kirkendall asked Schriner questions regarding the odor of marijuana, which Schriner voluntarily answered. During this early portion of the encounter, Schriner admitted to having recently smoked marijuana. Schriner contends that he was unreasonably seized under the Fourth Amendment at this point. We disagree and find that this contact was merely a first-tier police-citizen encounter, which, as noted above, does not implicate the Fourth Amendment.

Later in the encounter, Schriner was instructed by Kirkendall not to go back into his residence. Kirkendall testified that he did not permit Schriner to enter his residence at this point in order to prevent the loss of evidence while seeking a search warrant. However, Schriner does not point to any evidence that suggests that Kirkendall told Schriner that he was not free to leave during his encounter with law enforcement on his front porch. Schriner was free to move about the porch and leave the porch at any time. In fact, when Schriner stated that he intended to call his sister again to inform her that he was being arrested, Kirkendall replied, "That's not what I'm doing."

Schriner was free to leave the porch at any time. He simply was not allowed to enter his house. Even if we found that Schriner was being detained on his porch, by the time Kirkendall prohibited Schriner from going back into his residence, Schriner had already admitted to smoking and possessing marijuana. This, coupled with Schriner's neighbors' report and the strong odor of marijuana, provided sufficient evidence to support not only reasonable suspicion, but probable cause to justify Schriner's arrest.[20] This temporary restraint

---

[19] *Id.*

[20] See *State v. Vermuele*, 241 Neb. 923, 492 N.W.2d 24 (1992).

of Schriner while he was on his porch was not inappropriate under the Fourth Amendment.

In *Illinois v. McArthur*,[21] the U.S. Supreme Court held that police officers did not violate the Fourth Amendment when they detained a man outside his trailer home for approximately 2 hours while other officers obtained a search warrant. In that case, police had probable cause to believe the man's home contained drugs, and they had good reason to fear that unless restrained, the man would destroy the drugs before they returned with a warrant.[22] The officers neither searched the trailer home nor arrested the man before obtaining a warrant, and they restrained the man for a "limited period of time."[23] The U.S. Supreme Court explained that it had "upheld temporary restraints where needed to preserve evidence until police could obtain a warrant" and noted it had found no case in which it had "held unlawful a temporary seizure that was supported by probable cause and was designed to prevent the loss of evidence while the police diligently obtained a warrant in a reasonable period of time."[24]

Based on the analysis above, we find that the temporary seizure of Schriner, which was designed to prevent the loss of evidence and which continued for a reasonable period of time while law enforcement diligently obtained a search warrant, was not unlawful. Although a warrant was not ultimately obtained because, as we will discuss below, Schriner eventually consented to the search, the same principles found in *McArthur* apply.

We conclude as a matter of law that the district court did not err in its resolution of Schriner's motion to suppress on the basis of an improper seizure and arrest in violation of the Fourth Amendment.

---

[21] *Illinois v. McArthur*, 531 U.S. 326, 121 S. Ct. 946, 148 L. Ed. 2d 838 (2001).

[22] *Id.*

[23] *Id*., 531 U.S. at 332.

[24] *Id*., 531 U.S. at 334.

Challenged Statements

[9,10] Next, Schriner argues that his statements to law enforcement were improperly obtained under *Miranda*,[25] in violation of the Fifth Amendment, and that the district court erred in overruling in part his motion to suppress on that basis. *Miranda* warnings are required only where there has been such a restriction on one's freedom as to render one "in custody."[26] Being in custody does not require an arrest, but refers to situations where a reasonable person in the defendant's situation would not have felt free to leave and, thus, would feel the restraint on freedom of movement of the degree associated with a formal arrest.[27]

[11] *Miranda* prohibits the use of statements derived during custodial interrogation unless the prosecution demonstrates the use of procedural safeguards that are effective to secure the privilege against self-incrimination.[28] *Miranda* requires law enforcement to give a particular set of warnings to a person in custody before interrogation: that he has the right to remain silent, that any statement he makes may be used as evidence against him, and that he has the right to an attorney, either retained or appointed.[29]

[12,13] For purposes of *Miranda*, interrogation "refers not only to express questioning, 'but also to any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect.'"[30] But it is well founded that statements made in a conversation initiated by the accused or spontaneously volunteered by the accused are not the result of interrogation and

---

[25] *Miranda v. Arizona, supra* note 1.

[26] *State v. Dallmann*, 260 Neb. 937, 621 N.W.2d 86 (2000).

[27] See *State v. Rogers*, 277 Neb. 37, 760 N.W.2d 35 (2009).

[28] *State v. Juranek*, 287 Neb. 846, 844 N.W.2d 791 (2014).

[29] *Id.*

[30] See *State v. Bauldwin*, 283 Neb. 678, 700, 811 N.W.2d 267, 286 (2012) (ellipsis in original) (quoting *State v. Rogers, supra* note 27).

are admissible.[31] Put more broadly, any statement given freely and voluntarily without compelling influences is admissible in evidence.[32]

We find that Schriner was not in custody for the purposes of *Miranda* and the Fifth Amendment at any point prior to his formal arrest. Further, based on the evidence before us, including the body-camera recording of the entire encounter, Schriner freely volunteered a number of incriminating statements during his interaction with Kirkendall. Beginning very early on in the interaction, Schriner made several incriminating statements to Kirkendall that were not in response to words or actions by Kirkendall that were reasonably likely to elicit an incriminating response. For example, after Schriner's initial admission to having used marijuana, Schriner asked Kirkendall whether he would "cut [him] a break if [he] let [him] in" and whether he would "look the other way for 5 minutes, while [he got] rid of something." And after Schriner, unsolicited, disclosed that he had methamphetamine in his residence, Kirkendall discussed with Schriner the possibility of his cooperating on the methamphetamine "aspect of [the situation]." Following his formal arrest, Schriner made comments such as "I was growing some weed," "It helps my back," and "You guys can just lose that meth; you don't know how much I appreciate that." None of these statements were responsive to an interrogation. Rather, Kirkendall was often collecting evidence and speaking to another officer while Schriner was speaking.

These statements were admissible. The district court did not err in denying in part Schriner's motion to suppress on *Miranda* grounds.

## CHALLENGED CONSENSUAL SEARCH

Lastly, Schriner assigns that the district court erred in denying in part his motion to suppress because Schriner did not

---

[31] *State v. Rodriguez*, 272 Neb. 930, 726 N.W.2d 157 (2007).

[32] *State v. Dallmann, supra* note 26.

freely and voluntarily consent to the search of his residence. Specifically, Schriner argues that his consent was coerced, in violation of the Fourth Amendment, based on Kirkendall's indication that he had a search warrant. We find no merit in this contention.

[14,15] Warrantless searches and seizures are per se unreasonable under the Fourth Amendment, subject to a few established and well-delineated exceptions.[33] One well-recognized exception to the warrant requirement is a search undertaken with consent.[34]

[16-18] To be effective under the Fourth Amendment, consent to a search must be a free and unconstrained choice, and not the product of a will overborne.[35] Consent must be given voluntarily and not as a result of duress or coercion, whether express, implied, physical, or psychological.[36] The determination of whether the facts and circumstances constitute a voluntary consent to a search, satisfying the Fourth Amendment, is a question of law.[37] Whether consent to a search was voluntary is to be determined from the totality of the circumstances surrounding the giving of consent.[38]

[19] In *State v. Tucker*,[39] we held that consent was not coerced where officers repeatedly asked a suspect for permission to enter his apartment to look for illegal items and threatened to get a search warrant, eventually leading the suspect to step back from the door with his arms raised and his hands upward and outward.[40] We noted in *Tucker* that in situations

---

[33] *State v. Borst*, 281 Neb. 217, 795 N.W.2d 262 (2011).

[34] See *id*.

[35] *State v. Tucker*, 262 Neb. 940, 636 N.W.2d 853 (2001).

[36] *Id.*

[37] *State v. Modlin, supra* note 5.

[38] *Id.*

[39] *State v. Tucker, supra* note 35.

[40] See *id*.

where the searching officer has stated that he could obtain or was in the process of getting a warrant, the courts have never found such a statement coercive per se. Rather, the courts have generally looked at the statement made by the officer to determine if it was coercive in the particular factual situation.[41] We also held that "[a] statement of a law enforcement agent that, absent a consent to search, a warrant can be obtained does not constitute coercion."[42]

Considering the totality of the circumstances, we find that Schriner's consent was voluntary and not coerced. There is no evidence of police pressure. Kirkendall's body-camera recording shows that Schriner acted voluntarily and not due to duress or coercion. As the district court noted in its order on Schriner's motion to suppress, Kirkendall never told Schriner that he already had a search warrant, but, rather, only that the sheriff was going to "write" one. That does not undermine the validity of Schriner's subsequent consent. We find that there is no evidence in the record to support Schriner's contentions that Kirkendall "misrepresented that a warrant was presently being written" and that Kirkendall "falsely asserted that he already had a warrant."[43]

Consequently, we find that there was no Fourth Amendment violation in relation to the validity of Schriner's consent to the search of his residence, and we accordingly conclude that the district court did not err in denying in part Schriner's motion to suppress on this basis.

## CONCLUSION

For the reasons set forth above, we affirm the decision of the district court.

AFFIRMED.

---

[41] Id.

[42] Id. at 948, 636 N.W.2d at 860.

[43] See brief for appellant at 21.