Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/07/2023 09:08 AM CST

- 354 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
STATE v. HERNANDEZ CISNEROS
Cite as 32 Neb. App. 354

State of Nebraska, appellee, v. Lorenzo
Hernandez Cisneros, also known as
Lorenzo Hernandez-Lugo, appellant.

___ N.W.2d ___

Filed October 31, 2023.    No. A-23-045.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.

2. **Constitutional Law: Search and Seizure: Appeal and Error.** An appellate court applies a two-part analysis when reviewing whether a consent to search was voluntary. As to the historical facts or circumstances leading up to a consent to search, an appellate court reviews the trial court's findings for clear error. However, whether those facts or circumstances constituted a voluntary consent to search, satisfying the Fourth Amendment, is a question of law, which an appellate court reviews independently of the trial court.

3. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

- 355 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
32 NEBRASKA APPELLATE REPORTS
STATE v. HERNANDEZ CISNEROS
Cite as 32 Neb. App. 354

4. **Sentences: Appeal and Error.** A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court.

5. **Judges: Words and Phrases.** A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition.

6. **Trial: Evidence: Motions to Suppress: Waiver: Appeal and Error.** The failure to object to evidence at trial, even though the evidence was the subject of a previous motion to suppress, waives the objection, and a party will not be heard to complain of the alleged error on appeal.

7. **Appeal and Error.** An objection, based on a specific ground and properly overruled, does not preserve a question for appellate review on some other ground not specified at trial.

8. **Constitutional Law: Search and Seizure: Investigative Stops: Motor Vehicles.** A traffic stop is a seizure for Fourth Amendment purposes, and therefore is accorded Fourth Amendment protections.

9. **Constitutional Law: Warrantless Searches: Search and Seizure.** Warrantless searches and seizures are per se unreasonable under the Fourth Amendment, subject to a few established and well-delineated exceptions.

10. **Warrantless Searches.** One well-recognized exception to the warrant requirement is a search undertaken with consent.

11. **Constitutional Law: Search and Seizure.** To be effective under the Fourth Amendment, consent to a search must be a free and unconstrained choice, and not the product of a will overborne.

12. **Search and Seizure.** Consent to search may be implied by action rather than words.

13. ____. Whether consent to a search was voluntary is to be determined from the totality of the circumstances surrounding the giving of consent.

14. **Constitutional Law: Search and Seizure.** The determination of whether the facts and circumstances constitute a voluntary consent to a search, satisfying the Fourth Amendment, is a question of law.

15. **Evidence: Appeal and Error.** On a challenge to the sufficiency of the evidence, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

16. **Appeal and Error.** An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.

- 356 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
32 NEBRASKA APPELLATE REPORTS
STATE v. HERNANDEZ CISNEROS
Cite as 32 Neb. App. 354

17. **Controlled Substances.** For crimes under the criminal narcotics statutes, Nebraska common law recognizes both actual and constructive possession.

18. **Evidence: Proof.** Constructive possession may be proved by direct or circumstantial evidence and may be shown by the accused's proximity to the item at the time of the arrest or by a showing of dominion over it.

19. **Controlled Substances: Evidence.** Mere presence at a place where a controlled substance is found is not sufficient to show constructive possession. Instead, the evidence must show facts and circumstances which affirmatively link the suspect to the narcotic so as to suggest that he or she knew of it and exercised control over it.

20. **Investigative Stops: Motor Vehicles.** Generally, the fact that one is the driver of a vehicle, particularly over a long period of time, creates an inference of control over items in the vehicle.

21. **Investigative Stops: Motor Vehicles: Controlled Substances.** Possession of a controlled substance can be inferred if the vehicle's occupant acts oddly during the traffic stop, gives explanations that are inconsistent with the explanations of other vehicle occupants, or generally gives an implausible explanation for the travels.

22. **Controlled Substances: Circumstantial Evidence: Intent.** Circumstantial evidence sufficient to establish possession of a controlled substance with intent to deliver may consist of evidence of the quantity of the substance, equipment and supplies found with the substance, the place where the substance was found, the manner of packaging, and the testimony of witnesses experienced and knowledgeable in the field.

23. **Weapons: Motor Vehicles.** A weapon is concealed on or about the person if it is concealed in such proximity to the driver of an automobile as to be convenient of access and within immediate physical reach.

24. **Sentences.** When imposing a sentence, a sentencing judge should customarily consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.

25. ____. The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

Appeal from the District Court for Scotts Bluff County: LEO P. DOBROVOLNY, Judge. Affirmed.

- 357 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
STATE v. HERNANDEZ CISNEROS
Cite as 32 Neb. App. 354

Justin R. Huber, Deputy Scotts Bluff County Public Defender, for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.

Pirtle, Chief Judge, and Moore and Riedmann, Judges.

Pirtle, Chief Judge.

## I. INTRODUCTION

Lorenzo Hernandez Cisneros, also known as Lorenzo Hernandez-Lugo (Hernandez), appeals the district court for Scotts Bluff County's denial of his motion to suppress related to the search of his vehicle during a traffic stop. He asserts his consent to search the vehicle was not knowing and voluntary because he does not speak English and the consent was communicated, in part, via "Google Translate." Hernandez also challenges the admission of evidence from the search of the vehicle over his objections at trial, the sufficiency of the evidence supporting his convictions, and the length of the sentences imposed. We affirm.

## II. BACKGROUND

### 1. Traffic Stop

On February 6, 2022, Officer Brennan Martinez of the Gering Police Department performed a traffic stop on a vehicle with a burned-out driver's-side headlight. Upon approaching the vehicle, Martinez encountered the driver, Hernandez, and three other occupants. Martinez asked Hernandez for his license, registration, and proof of insurance. Hernandez indicated that he did not have a license, but provided an identification card from Mexico, the vehicle's registration, and proof of insurance. While his name appeared on the proof of insurance, it was not on the registration.

Martinez requested that Hernandez come to his patrol car to speak to him individually. Hernandez does not speak English, so they utilized Google Translate to communicate.

This entailed Martinez typing English into Google Translate on his phone and showing the Spanish translation to Hernandez. Hernandez would then type Spanish into Google Translate on his own phone and show Martinez the English translation.

Using Google Translate, Hernandez informed Martinez they had left Colorado that morning because two of the occupants wanted to go to "the casinos." This raised Martinez' suspicions because there are no casinos in the Nebraska Panhandle. After relaying several more messages, Martinez asked, via Google Translate, whether he could search the vehicle. Hernandez read the translation and Martinez asked, "Sí or no?" Hernandez responded, "Sí," meaning "yes."

## 2. Vehicle Search

During the search of the vehicle, Martinez found a black backpack on the driver's-side back seat. In the backpack, he found over a pound of methamphetamine packaged into six bags. Four of these bags each contained 4 ounces of methamphetamine, while the other two contained smaller amounts. He also discovered a handgun and a combination-lock bag in the backpack. Within the combination-lock bag, he found many resealable "designer baggies" with dollar signs on them.

## 3. Motion to Suppress

Relevant to this appeal, Hernandez was charged with possession of methamphetamine with intent to distribute with a weight of 140 grams or more, possession of methamphetamine, failure to affix a drug tax stamp, and carrying a concealed weapon. On July 27, 2022, Hernandez filed a motion to suppress all evidence seized from the search of his vehicle. He argued that the search was conducted without valid consent. Martinez, Nohemi Leal, and Hernandez testified at the September 23, 2022, hearing. Leal is a translator and interpreter who has worked for various police departments. Leal explained that she watched a portion of Martinez' body-worn camera footage and transcribed Hernandez' oral responses

- 359 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
32 NEBRASKA APPELLATE REPORTS
STATE v. HERNANDEZ CISNEROS
Cite as 32 Neb. App. 354

from Spanish to English. A written copy of this transcription was entered into evidence at the hearing.

### (a) Evidence

Martinez testified that once Hernandez got into his patrol car, he used Google Translate to communicate with Hernandez. Initially, Martinez' messages inquired as to what Hernandez was doing that night, where he and the other occupants were going, and whether he had been drinking alcohol or smoking marijuana. Martinez continued to ask questions through Google Translate but could not remember exactly what was asked. While some of Hernandez' responses included shoulder shrugs or stating "no se," meaning "I don't know," Martinez indicated Hernandez' responses were appropriate for the questions asked.

Martinez then asked Hernandez, via Google Translate, if he had permission to search the vehicle. Although Martinez was unsure of the specific wording of the request, it was "something along the lines of, can I have consent to search your vehicle?" Following this, Hernandez verbally replied several times in Spanish. Leal later transcribed and translated these responses into English:

[Hernandez:] Do you want to search it? I have my clothes.

[Martinez:] It's ok to search it?

[Hernandez:] It's my clothes. I have my clothes, that I have in there.

[Martinez:] Is it yes or no?

[Hernandez:] It's just that . . . Unintelligible[.]

[Martinez:] I am going to ask you if you have a problem with the vehicle.

[Hernandez:] I don't read well.

[Martinez:] Ok. Can I, can I search the vehicle?

[Hernandez:] [A]ppears to be reading[.]

[Martinez:] Yes or no?

[Hernandez:] Yes, you can search it.

- 360 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
STATE v. HERNANDEZ CISNEROS
Cite as 32 Neb. App. 354

[Martinez:] Yes?
[Hernandez:] Yes.
[Martinez:] Ok.

Martinez stated that he found multiple items of clothing inside the vehicle.

Hernandez, assisted by an interpreter, testified that he does not speak English and had difficulty communicating with Martinez the night of the traffic stop. He indicated that even with the help of Google Translate, he did not understand everything Martinez was asking. Specifically, he stated that he did not understand when Martinez asked to search the vehicle. When asked whether he gave permission for the vehicle to be searched, he believed Martinez was only asking where the vehicle was. He testified that when he responded to Martinez' question with "Sí," he believed that he was simply informing him that "[his] vehicle was there." Hernandez went on to state that if he had known Martinez was asking whether he could search the vehicle, the answer would have been no because the vehicle was not his.

### (b) District Court's Ruling

The district court issued its denial of Hernandez' motion to suppress on October 20, 2022. The district court stated, "The evidence is clear that [Hernandez] knew what was being asked of him, and responded affirmatively that the search could occur." Consequently, the district court found Hernandez' consent was knowingly and voluntarily given.

### 4. Trial and Sentencing

A jury trial was held on October 26, 2022. The parties stipulated that the substances discovered were methamphetamine. At trial, evidence was adduced that six packages containing more than a pound of rock methamphetamine, two digital scales, many small designer baggies, and a 9-mm handgun were discovered in the backpack that was found in the vehicle. The evidence also demonstrated that two cases of

- 361 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
32 NEBRASKA APPELLATE REPORTS
STATE v. HERNANDEZ CISNEROS
Cite as 32 Neb. App. 354

9-mm ammunition were discovered inside a hidden compartment within the vehicle's center console. Additionally, more methamphetamine was discovered in Hernandez' inner coat pocket when he was later searched at the Scotts Bluff County Detention Center.

### (a) Methamphetamine, Handgun, and Ammunition

The six packages of methamphetamine within the backpack were wrapped in plastic wrap, "saran wrap[ped]," and covered with detergent-soaked paper towels, then placed inside of a grocery bag. Martinez indicated that in his experience, drug smugglers utilize this form of packaging for easier distribution and to mask the scent of the drugs they carry. Martinez also found a combination-lock bag and a 9-mm handgun in the backpack. Within the combination-lock bag was a resealable baggie that contained large quantities of smaller designer resealable baggies with dollar signs on them.

Upon a later, more thorough, search of the vehicle, law enforcement discovered a hidden compartment under the vehicle's center console. To access this "cubbyhole," the center console had to be removed. Within the hidden compartment were two boxes of 9-mm ammunition. A magnetic lockbox with white residue inside was also discovered underneath the driver's seat. Law enforcement also noted the presence of many air fresheners throughout the vehicle.

### (b) Control of Vehicle

The State presented several items of evidence indicating the vehicle was in Hernandez' control at the time of the traffic stop. While his name did not appear on the registration, it was present on the proof of insurance. Officers also found in the vehicle a check dated January 6, 2021, paid to the order of Hernandez and two receipts that bore his name: one dated December 19, 2021, from a hotel and the other dated December 16, 2021, from a self-storage facility.

- 362 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
STATE v. HERNANDEZ CISNEROS
Cite as 32 Neb. App. 354

### (c) Detention Center Search

After the discovery of the methamphetamine and handgun in his vehicle, officers took Hernandez to the Scotts Bluff County Detention Center to be booked. Upon arriving at the detention center, he was searched by officers. During that search, officers removed a small designer baggie with dollar signs on it from his inner coat pocket. This baggie contained a small amount of crystalized methamphetamine. This baggie matched the other designer baggies with dollar signs found in the combination-lock bag from the vehicle.

### (d) Convictions and Sentencing

The jury found Hernandez guilty of possession of methamphetamine with intent to distribute with a weight of 140 grams or more, possession of methamphetamine, failure to affix a drug tax stamp, and carrying a concealed weapon. The court accepted the jury's verdicts and found Hernandez guilty of all charges.

Sentencing was held on January 12, 2023. The district court sentenced Hernandez to 20 to 20 years' imprisonment for the possession with intent to distribute conviction, 1 to 2 years' imprisonment for the possession conviction, 1 to 2 years' imprisonment for the drug tax stamp conviction, and 0 to 6 months' imprisonment for the carrying a concealed weapon conviction. The court ordered the sentences to be served concurrently, and the court granted 350 days' credit for time served on the first count.

### III. ASSIGNMENTS OF ERROR

Hernandez assigns, restated, that the district court erred by (1) overruling his motion to suppress evidence obtained as a result of the vehicle search; (2) overruling his objections to the admission of that evidence; (3) finding the evidence presented by the State was sufficient to support his convictions for possession of a controlled substance with the intent to distribute, failure to affix a drug tax stamp, and carrying a concealed weapon; and (4) imposing excessive sentences.

- 363 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
STATE v. HERNANDEZ CISNEROS
Cite as 32 Neb. App. 354

## IV. STANDARD OF REVIEW

[1,2] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. *State v. Saitta*, 306 Neb. 499, 945 N.W.2d 888 (2020). Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *State v. Saitta, supra*. The same two-part analysis is used when reviewing whether a consent to search was voluntary. *Id*. As to the historical facts or circumstances leading up to a consent to search, we review the trial court's findings for clear error. *Id*. However, whether those facts or circumstances constituted a voluntary consent to search, satisfying the Fourth Amendment, is a question of law, which we review independently of the trial court. *State v. Saitta, supra.*

[3] In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Miller*, 312 Neb. 17, 978 N.W.2d 19 (2022). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

[4,5] A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *Id.* A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *Id.*

- 364 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
STATE v. HERNANDEZ CISNEROS
Cite as 32 Neb. App. 354

## V. ANALYSIS

### 1. Motion to Suppress and Admission of Evidence Derived From Traffic Stop

Hernandez assigns the district court erred in overruling his motion to suppress because consent to search a vehicle garnered via a "translation app" cannot constitute valid consent. Hernandez essentially argues the district court's ruling was incorrect because (1) there was no evidence received as to Google Translate's accuracy and reliability and (2) he was unable to voluntarily and knowingly consent, because he did not speak English and the Google Translate translations created a misunderstanding as to what Martinez was asking.

### (a) Google Translate's Accuracy and Reliability

[6,7] There were no objections imposed at trial that attacked Google Translate's accuracy and/or reliability. As such, Hernandez failed to preserve this issue for appeal. The failure to object to evidence at trial, even though the evidence was the subject of a previous motion to suppress, waives the objection, and a party will not be heard to complain of the alleged error on appeal. *State v. Lowman*, 308 Neb. 482, 954 N.W.2d 905 (2021). Furthermore, an objection, based on a specific ground and properly overruled, does not preserve a question for appellate review on some other ground not specified at trial. *Id.*

While Hernandez' counsel objected to the admission of the evidence obtained from the search of the vehicle on Fourth Amendment grounds, no objections were made at trial during any of the testimony concerning the Google Translate translations. Without any objection made during this testimony—particularly an objection that attacked the translation's foundational reliability—the issue was not preserved for appeal. Accordingly, this argument fails.

- 365 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
STATE v. HERNANDEZ CISNEROS
Cite as 32 Neb. App. 354

### (b) Voluntary and Knowing Consent

Hernandez asserts he did not understand what Martinez was asking via Google Translate, so his consent to search the vehicle was not voluntary and knowing.

[8-14] A traffic stop is a seizure for Fourth Amendment purposes, and therefore is accorded Fourth Amendment protections. *State v. Thompson*, 30 Neb. App. 135, 966 N.W.2d 872 (2021). Warrantless searches and seizures are per se unreasonable under the Fourth Amendment, subject to a few established and well-delineated exceptions. *State v. Schriner*, 303 Neb. 476, 929 N.W.2d 514 (2019). One well-recognized exception to the warrant requirement is a search undertaken with consent. *Id*. To be effective under the Fourth Amendment, consent to a search must be a free and unconstrained choice, and not the product of a will overborne. *State v. Schriner, supra.* Consent to search may be implied by action rather than words. *State v. Saitta*, 306 Neb. 499, 945 N.W.2d 888 (2020). Whether consent to a search was voluntary is to be determined from the totality of the circumstances surrounding the giving of consent. *State v. Schriner, supra*. The determination of whether the facts and circumstances constitute a voluntary consent to a search, satisfying the Fourth Amendment, is a question of law. *State v. Schriner, supra*.

We begin by first rejecting Hernandez' contention that consent can never be found when it is obtained wholly, or in part, via a "translation app." While other methods of translation may be superior or preferred, we refuse to adopt such a broad standard. As Nebraska courts have consistently reiterated, whether valid consent is given depends on the totality of the circumstances surrounding the situation. See, *State v. Saitta, supra*; *State v. Schriner, supra*; *State v. Modlin*, 291 Neb. 660, 867 N.W.2d 609 (2015); *State v. Gorup*, 279 Neb. 841, 782 N.W.2d 16 (2010).

Considering the totality of the circumstances, we find Hernandez understood that Martinez was asking to search his vehicle and gave voluntary and knowing consent for him

- 366 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
STATE v. HERNANDEZ CISNEROS
Cite as 32 Neb. App. 354

to do so. Although Hernandez claims to have misunderstood Martinez' request, Leal's transcription of the oral communication indicates otherwise. Martinez testified that he typed something akin to "can I have consent to search your vehicle" into Google Translate. Upon Martinez' showing Hernandez the translation of that request, Hernandez asked in Spanish, "Do you want to search it? I have my clothes." Seconds later, he made another reference to his clothes, stating, "It's my clothes. I have my clothes, that I have in there." The vehicle was the only place law enforcement found any clothes. Further, after Martinez directed his attention back to the translation and again asked if he could search the vehicle, Hernandez stated, "Yes, you can search it." Following Martinez' confirming the response by asking "Yes?", Hernandez responded "Sí." This exchange clearly demonstrates that he understood that Martinez was asking to search the vehicle. With this understanding, his consent to search the vehicle was given knowingly and voluntarily. We conclude that the search of the vehicle was done with Hernandez' consent and that therefore, the district court did not err when it overruled his motion to suppress and admitted the evidence obtained from the search at trial.

### 2. Sufficiency of Evidence

Hernandez assigns the evidence submitted at trial was insufficient to prove him guilty of all counts. He asserts the State did not prove beyond a reasonable doubt that he possessed a controlled substance with intent to distribute, to wit: methamphetamine, more than 140 grams; failed to affix a drug tax stamp; and carried a concealed weapon.

### (a) Possession of Methamphetamine With Intent to Distribute

Hernandez argues the evidence adduced by the State at trial was insufficient to prove that he possessed methamphetamine with the intent to distribute because there was no evidence that he intentionally possessed the methamphetamine. He

- 367 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
32 NEBRASKA APPELLATE REPORTS
STATE v. HERNANDEZ CISNEROS
Cite as 32 Neb. App. 354

asserts the evidence merely demonstrates that he was driving a vehicle that happened to have methamphetamine hidden in it.

[15,16] On a challenge to the sufficiency of the evidence, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Rakosnik*, 22 Neb. App. 194, 849 N.W.2d 538 (2014). An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *Id.*

Possession with intent to distribute is set out in Neb. Rev. Stat. § 28-416 (Cum. Supp. 2020). The relevant portion provides: "[I]t shall be unlawful for any person knowingly or intentionally: (a) To manufacture, distribute, deliver, dispense, or possess with intent to manufacture, distribute, deliver, or dispense a controlled substance." § 28-416(1).

[17-19] Thus, to find Hernandez guilty of possession of methamphetamine with intent to distribute, the State had to show that he knowingly or intentionally possessed methamphetamine with an intent to deliver or distribute it. For crimes under the criminal narcotics statutes, Nebraska common law recognizes both actual and constructive possession. See *State v. Warlick*, 308 Neb. 656, 956 N.W.2d 269 (2021). Constructive possession may be proved by direct or circumstantial evidence and may be shown by the accused's proximity to the item at the time of the arrest or by a showing of dominion over it. *Id.* Mere presence at a place where a controlled substance is found is not sufficient to show constructive possession. *State v. Sherrod*, 27 Neb. App. 435, 932 N.W.2d 880 (2019). Instead, "the evidence must show facts and circumstances which affirmatively link [the suspect] to the [narcotic] so as to suggest that he [or she] knew of it and exercised control over it." *Id.* at 442, 932 N.W.2d at 888.

- 368 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
STATE v. HERNANDEZ CISNEROS
Cite as 32 Neb. App. 354

[20,21] The evidence was sufficient to demonstrate that Hernandez possessed the methamphetamine with the intent to distribute. Generally, the fact that one is the driver of a vehicle, particularly over a long period of time, creates an inference of control over items in the vehicle. *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011). Possession of a controlled substance can also be inferred if the vehicle's occupant acts oddly during the traffic stop, gives explanations that are inconsistent with the explanations of other vehicle occupants, or generally gives an implausible explanation for the travels. *Id.* The record shows Hernandez was driving the vehicle at the time of the traffic stop and had been in control of the vehicle for a lengthy period. Three items bearing his name were in the vehicle: a 13-month-old check made payable to him, a 3-month-old receipt from a self-storage facility, and another 3-month-old receipt from a hotel. Additionally, Hernandez told Martinez they were in the area because they were going to the casinos. This is suspect, as there are no casinos in the Nebraska Panhandle.

[22] The packaging of the methamphetamine and the other items found in the vehicle also support an inference that Hernandez possessed the methamphetamine with the intent to distribute. Circumstantial evidence sufficient to establish possession of a controlled substance with intent to deliver may consist of evidence of the quantity of the substance, equipment and supplies found with the substance, the place where the substance was found, the manner of packaging, and the testimony of witnesses experienced and knowledgeable in the field. *Id.* The considerable amount of methamphetamine was twice wrapped in plastic and covered with detergent-soaked paper towels. Beyond this manner of packaging being common with drug distributors, the vehicle also contained various drug paraphernalia. This included four digital scales, many designer resealable baggies, a magnetic lockbox with white residue in it, and a plethora of air fresheners throughout the vehicle. Martinez testified that in his experience, these tactics

- 369 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
STATE v. HERNANDEZ CISNEROS
Cite as 32 Neb. App. 354

and supplies were common for drug distributors. Additionally, the baggie containing crystalized methamphetamine found on Hernandez during the detention center search matched the designer baggies found in the backpack. Moreover, he was the only occupant of the vehicle to have methamphetamine on his person. Viewed in the light most favorable to the State, we find this evidence is sufficient for a rational trier of fact to find that Hernandez knew of the methamphetamine and had dominion or control over it beyond a reasonable doubt.

### (b) Failure to Affix Drug Tax Stamp

Hernandez asserts that because the evidence fails to demonstrate that he possessed the methamphetamine with the intent to distribute, the evidence fails to support a finding beyond a reasonable doubt that he committed the crime of failing to affix the requisite drug tax stamp. Neb. Rev. Stat. § 77-4309 (Reissue 2018) provides that a dealer distributing or possessing marijuana or a controlled substance without affixing the official stamp, label, or other indicium shall be guilty of a Class IV felony.

Consistent with the prior analysis, the evidence demonstrates a trier of fact could find that Hernandez possessed a controlled substance beyond a reasonable doubt. Martinez testified that none of the methamphetamine found in Hernandez' possession had the requisite drug tax stamp. Thus, there was sufficient evidence from which a rational trier of fact could find that Hernandez possessed the methamphetamine without affixing an official stamp, label, or other indicium of payment of tax.

### (c) Carrying Concealed Weapon

[23] Hernandez asserts that because he did not intentionally possess the backpack that contained the large amount of methamphetamine, he likewise was not in possession of the firearm located inside the backpack. Neb. Rev. Stat. § 28-1202 (Cum. Supp. 2022) provides that any person who carries a weapon or weapons concealed on or about his or

- 370 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
32 NEBRASKA APPELLATE REPORTS
STATE v. HERNANDEZ CISNEROS
Cite as 32 Neb. App. 354

her person, such as a handgun, a knife, brass or iron knuckles, or any other deadly weapon, commits the offense of carrying a concealed weapon. In applying § 28-1202 to drivers of motor vehicles, the Nebraska Supreme Court has repeatedly held that "'[a] weapon is concealed on or about the person if it is concealed in such proximity to the driver of an automobile as to be convenient of access and within immediate physical reach.'" *State v. Warlick*, 308 Neb. 656, 687, 956 N.W.2d 269, 296 (2021).

> That is not to say that for the evidence to be sufficient to convict a driver of violating § 28-1202, the weapon must have been found on the driver's person at the time it was seized or while driving, but there must be some evidence beyond mere speculation that the weapon was within immediate physical reach on or about the date the defendant is charged with committing the crime.

*State v. Warlick*, 308 Neb. at 687-88, 956 N.W.2d at 296. In other words, the weapon must be concealed "in such proximity to the passenger of a motor vehicle as to be convenient of access and within immediate physical reach." *Id.* at 688, 956 N.W.2d at 296-97.

In *State v. Warlick, supra*, the Supreme Court found that a firearm stored in a bag underneath the spare tire in the cargo area of the vehicle was outside the defendant's proximity and reach. The court noted that although there was testimony about the firearm being reachable from the back seat, the defendant was never in the back seat. *Id.* Thus, the evidence was insufficient to demonstrate the defendant was guilty of carrying a concealed weapon on or about his person. *Id.*

In *State v. Senn*, 295 Neb. 315, 888 N.W.2d 716 (2016), a handgun was found behind the passenger seat—between the passenger seat and the right side wall—of a truck. The firearm "'was completely on the other side of the cab'" and "'partially behind the seat, with some clothing on top of it.'" *Id.* at 317, 888 N.W.2d at 718. The Supreme Court found that "the jury, as a rational trier of fact, could have found that the handgun

- 371 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
32 NEBRASKA APPELLATE REPORTS
STATE v. HERNANDEZ CISNEROS
Cite as 32 Neb. App. 354

was on or about [the defendant's] person, even though it was not within his reach while driving." *Id.* at 322, 888 N.W.2d at 720. The court stated that "[n]either the statute nor the [jury] instruction[s] limited the jury's consideration to a particular time or location for the charged offense, except for the date and the county specified." *Id.* at 321, 888 N.W.2d at 720. As such, the court found that the jury could have found that the handgun was on or about the defendant's person, even though it was not within his reach while driving.

In the matter at hand, we conclude the State adduced sufficient evidence to support Hernandez' conviction for carrying a concealed weapon on or about his person. As opposed to the situation in *Warlick* where the bag containing the firearm was stowed underneath the spare tire, the evidence in this case demonstrated the handgun was in a backpack directly behind the driver's seat. This area of the vehicle was not only easily accessible to Hernandez generally, but it also provided him direct access for immediate use while driving. Therefore, viewing the evidence in the light most favorable to the prosecution, we conclude that the jury, as a rational trier of fact, could have found that the handgun was on or about Hernandez' person in such proximity as to be convenient of access and within immediate physical reach.

### 3. EXCESSIVE SENTENCES

[24,25] Hernandez assigns the sentences imposed were excessive and constituted an abuse of discretion by the trial court. A sentence imposed within the statutory limits will not be disturbed absent an abuse of discretion. See *State v. Abligo*, 312 Neb. 74, 978 N.W.2d 42 (2022). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against conscience, reason, and evidence. *Id.* When imposing a sentence, a sentencing judge should customarily consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal

- 372 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
STATE v. HERNANDEZ CISNEROS
Cite as 32 Neb. App. 354

record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Hernandez was convicted of possession of methamphetamine with intent to distribute, a Class IB felony; possession of methamphetamine, a Class IV felony; failure to affix a drug tax stamp, a Class IV felony; and carry a concealed weapon, a Class I misdemeanor. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022) contains the sentencing guidelines for felony convictions and Neb. Rev. Stat. § 28-106 (Reissue 2016) provides the guidelines for misdemeanor convictions. Pursuant to § 28-105, the minimum sentence for a Class IB felony is 20 years' imprisonment with life imprisonment as a maximum. Class IV felonies do not have a statutory minimum and can result in up to 2 years' imprisonment and 12 months' post-release supervision. Pursuant to § 28-106, a Class I misdemeanor has no minimum sentence and can result in up to 1 year's imprisonment.

Hernandez received the minimum sentence of 20 to 20 years' imprisonment for his Class IB felony, 1 to 2 years' imprisonment for each of his Class IV felonies, and 0 to 6 months' imprisonment for his Class I misdemeanor. All convictions were set to run concurrently. Each of these sentences were within the statutory range, so Hernandez' sentences will be disturbed only if there was a judicial abuse of discretion by the sentencing court.

The district court did not abuse its discretion in sentencing Hernandez. The record reflects that the district court reviewed the materials presented to it and considered the

- 373 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
32 NEBRASKA APPELLATE REPORTS
STATE v. HERNANDEZ CISNEROS
Cite as 32 Neb. App. 354

appropriate factors. There is no indication the district court considered any inappropriate factors in levying the sentences. Further, the district court imposed the minimum sentence allowed by statute for a Class IB felony, and due to the concurrent sentences, Hernandez will not serve any sentence beyond that statutory minimum. With that reality, the district court's sentencing is not clearly against conscience, reason, or evidence. Hernandez' final assignment of error fails.

## VI. CONCLUSION

For the reasons set forth above, we affirm the district court's overruling of Hernandez' motion to suppress and objections made at trial to the evidence obtained as a result of the vehicle search. We also find that the evidence was sufficient to support Hernandez' convictions and that the district court did not abuse its discretion in levying his sentences.

AFFIRMED.